## In re Estate of William Murphy, deceased. Appeal of Ann M. Kurtz et al.

*Wills—Gift to benevolent and charitable objects—Discretion of surviving executor.*

Testator directed as follows: " The balance of my estate, after the payment of the above legacies and the collateral inheritance tax on them, to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors or their successors." *Held,* (1) that the word " benevolent " as used by testator should be construed as synonymous with " charitable ; " (2) that the residuary bequest was not void for uncertainty ; (3) that the sole surviving executor had the power to designate the beneficiaries under the residuary clause.

*Will—Precatory words—Trust—Lapsed legacy.*

Testator gave certain shares of stock to his wife, and added this clause in his will: " To this provision in my will I add however, the following request, that, if at the expiration of one year after my decease the value of my estate has not materially decreased from the appraiser's estimate, then she would of her own free will and accord make the following distribution of the above named stock." Then follows the names of the persons and the number of shares which should be given to each person designated. The will contained a residuary clause. Testator's wife died in his lifetime. *Held,* (1) that the words used in the will were merely precatory, created no trust, and did not in any way qualify the absolute gift to the wife; (2) that the lapsed legacy of the stock to the wife, fell into the residue.

Argued Nov. 8, 1897. Appeal, No. 178, Oct. T., 1897, by Ann M. Kurtz et al., from decree of O. C. Allegheny Co., June T., 1897, No. 115, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of the court below which was as follows :

William R. Murphy died testate on April 18, 1896. By his will dated July 12, 1894, he made the following provisions for his wife, who died prior to him, to wit: on September 29, 1895:

" Second. I will and bequeath to my wife, Matilda T. Murphy, the sum of Five thousand ($5,000) dollars, and one hun-

dred and fifty (150) shares of the stock of the Pennsylvania Railroad Company, also all my household furniture, my pew in the First Presbyterian Church of Pittsburg and my lot in the Allegheny Cemetery; these bequests with the provisions made in clause Third, to be in lieu of her dower and statutory interest in my estate: To this provision in my will I add however the following request, that, if at the expiration of one year after my decease the value of my estate has not materially decreased from the appraisers' estimate, then she would of her own free will and accord make the following distribution of the above named Pennsylvania Railroad Company stock. To my nephews, J. W. Murphy, J. M. Kurtz and Daniel Cooper, twenty (20) shares each; to my nieces, Annie Murphy, Elizabeth Kurtz, Lucy Randall and Martha Crane, ten (10) shares each; to my nephews, James M. Cooper (son of Wm. M. Cooper,) Frank Cooper and William M. Cooper, (sons of Daniel Cooper,) to my niece Fannie Cooper (daughter of Daniel Cooper) and to James M. Kurtz, in trust for his children, ten (10) shares each.

"Third. The rest and residue of my estate of every kind, I give and bequeath to David Robinson, his heirs and assigns, in trust, however, for the following purposes: to invest and reinvest the same in such securities as he shall deem safe, and the net income and profits thereof to pay to my wife, Matilda T. Murphy, during the term of her natural life, and at her decease the principal sum of said residuary estate to be by said trustee paid as follows: "

He then gave certain pecuniary legacies and provided as follows in the last paragraph:

"6. The balance of my estate, after the payment of the above legacies and the collateral inheritance tax on them, to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors, or their successors.

"It is my will that, should there be a deficiency in my estate, the above legacies shall abate proportionately, save that I wish those to the Boards of Foreign Missions and Home Missions to be paid in full and free from any tax.

"I appoint David Robinson and my wife, Matilda T. Murphy, executors of my will, without bonds, no bonds to be required of them as trustees of the residuary estate."

David Robinson having died prior to testator, he, on February 7, 1895, by codicil, appointed William A. Robinson as trustee and executor instead of said David Robinson, deceased.

William A. Robinson, as surviving executor, filed this account and by writing filed, made the following distribution of the residue of the estate:

"To the Home for Aged Protestant Women, at Wilkinsburg, Penna., five hundred dollars.   To the Passavant Memorial Home for Epileptics, Rochester, Penna., five hundred dollars. To the trustees of Washington and Jefferson College at Washington, Penna., for permanent funds, one thousand dollars.   To the Trustees of the Western Theological Seminary of the Presbyterian Church in Allegheny, Penna., in aid of fund for establishing a chair of Sacred Rhetoric and Elocution, one thousand dollars.   The balance of the said estate to be divided into four equal parts: One of said parts to be given to each of the following institutions, namely: To the Homeopathic Medical and Surgical Hospital and Dispensary of Pittsburg, Penna., for permanent funds, one of said four parts; to the Allegheny General Hospital in Allegheny, Penna., for permanent funds, one of said four parts; to the Trustees of Washington and Jefferson College at Washington, Penna., for permanent funds, one of said four parts, and to the Presbyterian Hospital of Pittsburg and Allegheny, Penna., for permanent funds, one of said four parts."

It is claimed by the next of kin (1) that the bequest in the residuary clause is void for uncertainty; (2) that the surviving executor had not the power alone to designate the beneficiaries; (3) that the lapsed legacy to testator's wife did not fall into the residue.

In Missionary Society's Appeal, 30 Pa. 425, it was said that "In the case of a will making a charitable bequest, it is immaterial how vague, indefinite and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in someone over its application to those objects."   Such discretionary power here is vested in the executors; but it is contended upon the authority of Morice v. Bishop of Durham, 9 Ves. 399, where the bequest was for such objects of benevolence and liberality as the trustee in his discretion should most approve, and other English cases that, as the bequest here

is for benevolent as well as charitable uses, it is void for uncertainty. In Witman v. Lex, 17 S. & R. 88, GIBSON, C. J., in commenting upon Morice v. Bishop of Durham, said that such a gift would probably be upheld in Pennsylvania; but there have been no cases cited of our Supreme Court directly in point; there are, however, from other states. In Saltonstall v. Sanders, 11 Allen, 446, Mr. Justice GRAY sustained a trust "for the furtherance and promotion of good morals, and in aiding objects and purposes of benevolence and charity." On page 468 he said, "The decisions of the English courts since our revolution are of no binding authority on this Court, and upon such a question as the interpretation of the word 'benevolence,' as connected with 'charity,' of no particular weight when opposed to the well settled meaning of the words in our own law." And on page 470, "Whatever therefore may be the meaning in the law of Massachusetts of the word 'benevolence' by itself there can be no doubt that when used in connection with 'charity' it is synonymous with it." A still stronger case is Rotch v. Emerson, 105 Mass. 431, where a gift to trustees "to be by them applied for the promotion of agricultural or horticultural improvements or other philosophical or philanthropical purposes at their discretion" was sustained as a charitable bequest. In Goodale v. Mooney, 60 N. H. 528, the following bequest was sustained: "I place the remainder of my property in the hands of my executors to be distributed by them after my decease, among my relatives and for benevolent objects." On page 534 the Court said: "In many cases the word 'benevolent' has been coupled with 'charitable' or some equivalent word, or has been mentioned in connection with such public institutions as to show an intent to make it synonymous with charity." They are also synonymous in their ordinary meaning. See Webster's Dictionary.

It seems then that the word "benevolent" as used by the testator, is to be construed as synonymous with "charitable," and the residuary bequest is therefore not void for uncertainty. But it is contended that Wm. Robinson, as the sole surviving executor, had not the power to designate the beneficiaries under the residuary clause. If the power were incident to the persons of the executors and not to the office, this position would, perhaps, be well taken. The testator provided that the selec-

tion of the beneficiaries should be made "by my executors or their successors." The distribution of the residuary estate was not to be made until after the death of his wife; and it is not probable he anticipated that the beneficiaries would be designated until then, and his wife, as executrix, would not therefore take part. The word "successors" appears to indicate that he intended the power of selection should be exercised by the persons filling the office after his wife's decease; and the power seems to be annexed to the office, and not to the person. In Perry on Trusts, sec. 499, it is said, " The question is whether the donor reposed a personal trust and confidence in the trustees appointed, or whether he reposed the power in whomsoever might in fact fill the office of trustee." And in Hill on Trustees, 489, " Where the power is annexed to the office of trustees and one or more of the trustees refuse to accept the trust, it is settled that those who accept may exercise the power." We think the surviving executor had power to designate the beneficiaries, and as they are all charitable to some extent, his designation is valid and distribution must be made accordingly.

The legacy to his wife was given to her absolutely, coupled with a suggestion that under certain contingencies she should give the Pennsylvania railroad stock to certain persons. The words are merely precatory, created no trust, and did not in any way qualify the absolute gift to her. The legacy lapsed by reason of her death before the testator, and as the will contains a general residuary clause, and it is evident it was the intention of the testator to dispose of his whole estate, the lapsed legacy falls into the residue, and must be distributed as part of it to the beneficiaries designated by the executor: Gray's Appeal, 147 Pa. 67; Powell's Appeal, 138 Pa. 322; Reimer's Estate, 159 Pa. 212.

The court entered the following decree:

And now, to wit: Sept. 2, 1897, this matter came on for hearing, audit and distribution, at this term, and testimony taken, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the fund and securities in hands of accountant, viz., $44,201.14, be paid in accordance with the schedule of distribution hereto attached and made part hereof, unless an appeal be taken hereafter within twenty days.

Exceptions filed by the next of kin, which appear by the assignments of error, were dismissed by the court.

*Errors assigned* were (1) In entering the decree of September 2, 1897. (2) In dismissing appellants' first exception to the decree of September 2, 1897, which exception was as follows: "1. The learned court erred in holding as valid the following portion of the sixth clause of the third paragraph of the will of decedent, to wit: 'The balance of my estate, after the payment of the above legacies and collateral inheritance tax on them, to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors, or their successors.' The learned court should have held the said clause void for uncertainty." (3) In dismissing appellants' second exception, which was as follows: "2. The learned court erred in not holding that the power of appointment vested in the executors or their successors is under the above clause incapable of exercise by the surviving executor alone." (4) In dismissing the appellants' third exception, which was as follows: "3. The learned court erred in holding that the lapsed legacies and devises to Mrs. Matilda T. Murphy are to be distributed under the residuary clause." (5) In dismissing the appellants' fourth exception which was as follows: "4. The learned court erred in holding that the 150 shares of Pennsylvania Railroad Company stock bequeathed to Mrs. Matilda T. Murphy, should fall into the residuary estate, and be distributed to other persons than those designated by the testator to be the objects of his bounty, to wit: J. W. Murphy, J. M. Kurtz, Daniel Cooper, Annie Murphy, Elizabeth Kurtz, Lucy Randall, Martha Crane, James M. Cooper, Frank Cooper, William M. Cooper, Fanny Cooper and James M. Kurtz in trust as set forth in the second paragraph of decedent's will." (6) In dismissing the appellants' fifth exception, which was as follows: "5. The learned court erred in decreeing distribution of the residue of decedent's estate in accordance with the writing filed by Wm. A. Robinson, surviving executor, to wit: (*a*) To the Home for Aged Protestant women at Wilkinsburg, $500; (*b*) To the Passavant Memorial Home for Epileptics, Rochester, Pa., $500; (*c*) To the Trustees of Washington and Jefferson College, Washington, Pa., $1,000; (*d*) To the Trustees of the Western Theological Seminary of the Presbyterian Church, Allegheny, Pa., $1,000; (*e*) To the Homeopathic Medical and Surgical Hospital and Dispensary of Pittsburg, $4,421.04; (*f*) To the Allegheny Gen-

eral Hospital in Allegheny, $4,421.04; (*g*) To the Trustees of Washington and Jefferson College, $4,421.03; (*h*) To the Presbyterian Hospital of Pittsburg and Allegheny, $4,421.03."

*John Wilson*, for appellant.—The residuary clause was void for uncertainty: Williams v. Kershaw, 5 Law. Jour. Equity, 84; Ellis v. Selby, 1 Mylne & Craig, 286; Leavers v. Clayton, L. R. 8 Ch. Div. 584; Norris v. Thomson's Exrs., 19 N. J. Eq. 307; Thomson v. Norris, 20 N. J. Eq. 490; Adye v. Smith, 44 Conn. 60; Kinike's Est., 155 Pa. 101.

Since Mr. Justice GIBSON gave utterance to the dictum in Witman v. Lex, in 1835, the legislature of Pennsylvania by the act of 1855, has, by necessary inference, adopted in this state the English doctrine as to what are legal charitable uses: Com. v. Beneficial Assn., 137 Pa. 412.

The power of selection or appointment, having been conferred upon the "executors or their successors," cannot be exercised by less than two, and is not exercised at all by the surviving executor: Appeal of Children's Hospital, 10 W. N. C. 313; Fontain v. Ravenel, 17 How. 369; Gambell v. Trippe, 75 Md. 252; Cole v. Wade, 16 Vesey, 27; Atty. Gen. v. Berryman, 1 Dickens, 168; Powles v. Jordan, 62 Md. 503; Sugden on Powers, *319; Atwaters v. Birt, Cro. Eliz. 856; Butler v. Bray, Dyer, 189*b*; Barber v. Cary, 1 Kernan, 402.

The presumption in favor of the residuary legatee may be rebutted by any language clearly showing an intent on the part of the testator to circumscribe and confine the residuary bequest so as to exclude from its operation in every event, property already bequeathed: Atty. Gen. v. Johnstone, 2 Amb. (Eng.) 577; Davers v. Dewes, 3 P. Wms. 40; Lea v. Brown, 3 Jones Eq. (N. C.) 141; Hudson v. Pierce, 8 Ired. Eq. 128; Goodwin v. Ingraham, 29 Hun, 221; Gray v. Corbit, 4 Del. Ch. 135; Gibson v. Hale, 17 Sim. 129; Moss v. Helsley, 60 Tex. 437; Brewster v. McCall, 15 Conn. 297; Van Cortlandt v. Kip, 1 Hill, 590; Van Kleeck v. Ref. Dutch Ch., 6 Paige, 600; James v. James, 4 Paige, 115; Yard v. Murray, 86 Pa. 115.

There is no clause, not even a sentence, in the will which standing alone gives Mrs. Murphy an absolute and unrestrained ownership of the property: Hopkins v. Glunt, 111 Pa. 287; McIntyre v. McIntyre, 123 Pa. 329; Bowlby v. Thunder, 105 Pa. 173.

" Recommend " is often sufficient to create a trust when the property and the objects are certain: Cunliffe v. Cunliffe, Amb. 2, 686; Malim v. Keighley, 2 Ves. 529; Malim v. Barker, 3 Vesey, 150; Pushman v. Filliter, 3 Ves. 7; Tibbits v. Tibbits, 19 Vesey, 656; Irvine v. Sullivan, L. R. 8 Eq. Cases, 673.

*George B. Gordon*, with him *John Dalzell* and *William Scott*, for Homeopathic Hospital, *Cohen & Israel* for Allegheny Hospital, *A. M. Todd* and *Thomas Herriott*, for Washington & Jefferson College, and *William A. Way*, for Presbyterian Hospital.— A power of appointment in Pennsylvania may be given to an executor for any purpose that the testator sees fit to specify, or for no purpose at all: Beck's App., 116 Pa. 547.

The English courts themselves have expressed in later years the gravest doubts as to the soundness of their rule, but have adhered to it simply for the reason that they considered that they were bound by the prior decisions: Leavers v. Clayton, L. R. 8 Ch. Div. 584.

We submit that the decisions in Massachusetts, in Saltonstall v. Sanders, 11 Allen, 446; Rotch v. Emerson, 105 Mass. 431, and in New Hampshire in Goodale v. Mooney, 60 N. H. 528, laid down the true rule upon this subject.

The surviving executor had the power to make the distribution: Perry on Trusts, sec. 499; Zebach v. Smith, 3 Binney, 69; Miller v. Meetch, 8 Pa. 417.

The appellants' third proposition is that the legacy given to Mrs. Murphy in the second paragraph of the will did not lapse. This is utterly a variance with all our Pennsylvania decisions: Gray's Est., 147 Pa. 67; Powell's Est., 138 Pa. 322; Reimer's Est., 159 Pa. 212.

PER CURIAM, January 3, 1898:

We find nothing in this record that requires a reversal or modification of the decree from which this appeal was taken; nor do we think that any of the questions presented in the specifications of error require further notice than is taken of them in the opinion of the learned judge who entered the decree.

On his opinion, the decree is affirmed and appeal dismissed at appellants' costs.