W. D. Bushong, Executor, *v.* James C. Taylor *et al.*

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

E. R. Taylor, for complainant, appellee.

W. N. Hickey, L. D. Smith, Attorney-General, and Roy H. Beeler, Assistant Attorney-General, for defendants, appellants.

Mr. Chief Justice Green delivered the opinion of the Court.

A construction of item five of the will of Mrs. Ellen Robertson is presented on this appeal. The chancellor upheld as a charitable trust a bequest undertaken in said item of the will. The Attorney-General and the Commissioner of Finance and Taxation were made parties to the suit and they insisted that the trust attempted was invalid and that the bequest of $15,000 passed to the residuary legatee and was liable for the inheritance tax. The decision of the chancellor being adverse, the Attorney-General and Commissioner of Finance and Taxation have brought the matter to this court.

Item five of Mrs. Robertson's will is as follows:

"I give, devise, and bequeath to James C. Taylor, W. D. Bushong, and James R. Forgey, Sr., as trustees, and to their successors in trust, the sum of fifteen thousand dollars to be invested by them in bonds, and to be reinvested by them as it shall be necessary, and to use and expend the income therefrom in improving, caring for and maintaining Bethesda Cemetery and Church situated in Hamblen County, Tennessee, between the towns of Morristown and Russellville. These said trus-

tees are empowered and directed to use their own sound discretion as to the determination of the various improvements which shall be made under this trust, but only the income is to be used for this purpose, and in no event shall the principal sum of the fund be trenched upon. In the event of the death or resignation of any of the trustees, the remainder trustee or trustees shall appoint a suitable successor or suitable successors who shall have all the authority which is hereby vested in the original trustees. The trustees are to keep an accurate account of the manner in which they execute this trust. Trustees of this fund are each to give bond in the sum of five thousand dollars, in a surety company authorized to do business in Tennessee, conditioned upon the faithful performance of this trust. The premium on these bonds is to be paid out of the income of the fund herein established. Such trustees are to serve without compensation.''

■ The property known as the Bethesda Cemetery and Church comprises some ten or twelve acres of ground. It is all inclosed and the church house and grounds are kept up and cared for by donations of interested parties. A great number of people have been buried in the cemetery and many handsome stones erected there. The property is controlled by a board of trustees who have preserved their organization at all times and looked after the building and grounds. The church edifice was erected nearly a hundred years ago, has been repaired from time to time, and is described as now being in good condition.

Up until the Civil War the church building was the home of a Presbyterian congregation. Members of the congregation became involved in the strife and bitter

feeling of that period and in 1866 or 1867 the church ceased to function. Some of the members withdrew and joined a Southern Presbyterian Church in the neighborhood and others withdrew and joined a Northern Presbyterian Church in the neighborhood. Since 1867 there has been no regular pastor at this church, no church organization preserved, and the property is not claimed either by the Northern Presbyterian Church or by the Southern Presbyterian Church.

As stated heretofore, however, the trustees have kept up their organization, preserved the property, and the church house has been used constantly for services over the remains of those interred in the burying grounds. Perhaps other meetings have been held in the church from time to time, non-sectarian in character.

The lands inclosed were acquired under three deeds or sets of deeds.

On October 24, 1834, Joseph Shannon conveyed to George Gillespie and others, as trustees of Bethesda Church, three and one-half acres "for the special purpose of a Presbyterian Church and graveyard."

On April 5, 1919, Robert C. Crouch and his wife, for a consideration of $1220, conveyed to Henry W. Long and others as trustees of Bethesda Church and graveyard six and one-tenth acres of land adjoining the original three and one-half acres conveyed by Shannon in 1834. This deed recited that the premises were conveyed "for graveyard or cemetery purposes only and are not to be used for any other purposes, and are to be sold and conveyed by said trustees in lots to persons desiring to purchase lots in said boundaries for burial purposes, said premises are to be used for burial purposes for white people only." The deed goes on to pro-

vide that one-fourth of the proceeds from the sale of lots shall be devoted to the creation of a fund to keep in repair the Bethesda graveyard, "including the present lands as well as the lands conveyed by this conveyance and also including the upkeep of the church house on said premises," and the deed further provides that "50% of said funds shall be devoted to the improvement and development of the lands heretofore described and conveyed and the remaining 25% shall be used to create a fund to repay the individuals above named who advanced said $1220." It appeared that certain of the trustees had advanced the $1220 for the purchase of this land.

The remainder of the grounds, as at present inclosed, seems to consist of some forty burial lots adjoining the original three and one-half acre tract which, it is said by witnesses testifying, were conveyed to individual lot owners for burial purposes by Robert C. Crouch and wife. It is said that these deeds were made around the year 1896. While two of the owners of these lots testify that they acquired their burial lots by deed of Robert C. Crouch and wife as aforesaid, an inspection of their deeds which they filed shows to the contrary. These deeds are executed by "Robert C. Crouch, Pres. and David Barton, Sec. & Treas." In both of the deeds it is recited that Crouch and Barton, as such officials, by virtue of the authority vested in them by the board of trustees of said church and graveyard, "have this day sold, etc."

It seems quite likely, therefore, that witnesses were mistaken in saying that any of these forty burial lots were acquired by individual deeds of Crouch and wife. The deeds filed indicate that Crouch and wife had conveyed this portion of the property last referred to to the

528

trustees of Bethesda Presbyterian Church and Cemetery and that the forty lots were sold by said trustees.

■ In any event, all the property is now and has been for many years in a single inclosure. It is all kept up and controlled by the trustees of Bethesda Presbyterian Church and Cemetery. It was all conveyed for burial purposes and has been removed from trade and commerce, and is irrevocably committed to the use for which it was conveyed. *Hines* v. *State,* 126 Tenn., 1. It is scarcely possible, in view of the lapse of time, the dominion asserted over all the property by the trustees and the benefits received by all the property at the hands of the trustees, that anyone would now be permitted to interfere with the reasonable management of any of the said property by said trustees.

While the property is referred to as Bethesda Presbyterian Church and graveyard, it seems from the testimony of one of the trustees, himself a Baptist, that the right of burial was open to anyone, regardless of denominational affiliations, who bought a lot. Soldiers of both armies were buried on these grounds, old family negroes, together with many prominent individuals of the public generally.

■ The whole institution, therefore, church house included, is now nothing more than a public burying ground, with a chapel maintained thereupon. That a bequest in trust for the maintenance of such an enterprise is for a valid charitable use is settled by decisions of this court.

In *Cemetery Co.* v. *Creath,* 127 Tenn., 686, it was said:

"It is not to be doubted that a grant for the maintenance of such a public cemetery (as contradistinguished from one for the maintenance of private graves—*Hornberger* v. *Hornberger,* 12 Heisk., 635) is to be upheld as

being in the nature of a pious and charitable use. *Hopkins* v. *Grimshaw,* 165 U. S., 342, 17 Sup. Ct., 401, 41 L. Ed., 739; *In re Vaughan,* 33 Ch. D., 187, 55 L. T. (N. S.), 547, followed by *In re Mauser,* 1 Ch., 68, 92 L. T. (N. S.), 79, 1 Brit. Rul. Cas., 923, and notes; *Johnson* v. *Holified,* 79 Ala., 423, 58 Am. Rep., 596; *Hoeffer* v. *Clogan,* 171 Ill., 462, 49 N. E., 527, 40 L. R. A., 730, 63 Am. St. Rep., 257; 6 Cyc., 918."

In *Town of Pulaksi* v. *Ballentine,* 153 Tenn., 393, we said:

"We are of opinion that the operation of a cemetery is a governmental function. Although sentiment is involved, the maintenance of a cemetery is in the interest of the public health and safety just as a park system, the collection of garbage, and the upkeep of a fire department."

In *Gibson* v. *Frye Institute,* 137 Tenn., 452, we said that "a bequest for governmental purposes which tends to reduce taxation and lessen the burdens of government is charitable."

The court distinguished *Hornberger* v. *Hornberger,* 59 Tenn. (12 Heisk.), 635, in *Cemetery Co.* v. *Creath, supra.* Similar to *Hornberger* v. *Hornberger* is *Fite* v. *Beasley,* 80 Tenn. (12 Lea), 328. Both these cases dealt with the bequests for the maintenance of private graves.

The circumstance that lots are sold in the Bethesda graveyard does not deprive it of its character as a public enterprise. *Railroad* v. *Cemetery Co.,* 116 Tenn., 400.

The briefs contain considerable discussion of the validity of chapter 137 of the Acts of 1917, which Act, however, we think has no bearing on the case before us. The Act of 1917 undertook to prevent the failure "because of an attempt to create a perpetuity or for lack

of a trustee'' of any trust heretofore or hereafter created to aid the poor or for the promotion of morality, education or religion, and to provide a trustee or trustees therefor.

Dealing only with trusts to aid the poor, or for the promotion of morality, education or religion, the provision that such trusts should not fail ''because of an attempt to create a perpetuity'' is innocuous. Such trusts as these are clearly charitable trusts, not within the meaning of the constitutional ban on perpetuities, and no such trust was ever stricken down for such reason. That part of the Act of 1917 which undertakes to provide for the appointment of a trustee has no application here since trustees were appointed by the testatrix for the trust involved and the trust was sufficiently definite. Moreover, the trust before us, while charitable, could scarcely be described as one to ''aid the poor, or for the promotion of morality, education or religion.''

 The chancellor was of opinion that the forty or more lots supposed to have been conveyed to individuals by deeds of Crouch and wife should not share in the benefits of this trust. For the reasons stated, we think he was wrong about this and his decree will be modified accordingly, and otherwise affirmed.