336

THE M. D. THATCHER ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87974.    Promulgated August 16, 1938.

*Leon E. Williams, C. P. A., Egbert Robertson, Esq., Henry L. McIntyre, Esq., Montgomery Dorsey, Esq.,* and *W. Clayton Carpenter, Esq.,* for the petitioner.
*Lewis S. Pendleton, Esq.,* for the respondent.

338

340

OPINION.

DISNEY: The assignment of errors herein raises issues the determination of which involves the consideration of sections 319 and 321 (a) (2) of the Revenue Act of 1924. Section 319 imposes a tax upon the transfer by a resident by gift, during the calendar year 1924, of any property wherever situated, whether made directly or indirectly. Section 321 provides that, in computing the amount of the gifts subject to the tax imposed by section 319, there shall be allowed as deductions:

(a) In the case of a resident—

    \*        \*        \*        \*        \*        \*        \*

(2) The amount of all gifts or contributions made within the calendar year to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees \* \* \* but only if such gifts or contributions are to be used by such trustee or trustees \* \* \* exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \* and the amount of all gifts or contributions made within the calendar year by such corporation, trustee \* \* \* or association for a religious, charitable, scientific, literary or educational purpose \* \* \*.

In the consideration and determination of the issues in the instant case, we must bear in mind that charitable bequests are favorites of the law, *St. Louis Union Trust Co.* v. *Burnet*, 59 Fed. (2d) 922, are expressly encouraged by statute, and should be broadly construed. *Edwards* v. *Slocum*, 264 U. S. 61; *John Markle et al., Executors*, 28 B. T. A. 201, 204; *Ould* v. *Washington Hospital*, 95 U. S. 303; and *Helvering* v. *Bliss*, 293 U. S. 144, 151.

The deductibility of a gift to charity under section 321 (a) (2), *supra*, must be determined as of the date the gift was made.

In the instant case, the question is whether on December 30, 1924, the date of the execution and delivery of the trust instrument and the securities described therein to the trustees designated by the M. D. Thatcher Estate Co., the remainder interest in the trust fund here involved was so transferred and vested in the three trustees named in the trust instrument as to render the transfer of the remainder interest subject to tax in 1924, as claimed by the respondent, or whether the petitioner is entitled to a deduction of the amount of said remainder interest from the total amount of gifts, as claimed by petitioner under section 321 (a) (2), *supra*.

The trust instrument does not use the exact language employed in the statute, section 321 (a) (2), which, in applicable instances, authorizes the allowance of deductions such as claimed by the petitioner. Paragraph five of the trust deed directed that after the death of Luna A. Thatcher the trustees "shall transfer and pay all trust funds and property to any benevolent corporation or one not for profit that may have been formed for this purpose by Luna A. Thatcher during her lifetime, or that may be formed by her executors pursuant to her testamentary direction, it being anticipated that she will cause to be formed for this purpose a corporation to be known as The Mahlon D. and Luna A. Thatcher Memorial Association."

Mrs. Thatcher died December 31, 1935, and by her last will and testament, executed December 6, 1935, provided in paragraph twenty-six, as set forth in our foregoing findings of fact, in effect that she had organized Charities, Inc., a corporation not for pecuniary profit, but for charitable and educational uses, and that in order to bring comfort and happiness to some who otherwise would lack it, she gave one-half of her property to Charities, Inc.

The record shows that the alleged "charitable corporation" which Mrs. Thatcher "caused to be formed" was "Charities, Inc.", the organization of which was completed on December 19, 1924. The second article of its certificate of incorporation states:

The objects of this corporation shall be to receive gifts and grants of money and property of every kind and to administer the same for charitable, educational, *civic and philanthropic* uses and to do anything necessary or proper for the accomplishment of these purposes. [Italics supplied.]

There is therein no requirement in exact terms that the gifts and grants of money and property received by it should be administered "*exclusively*" for the *uses* enumerated therein nor are the uses for which the gifts and grants therein were to be administered identical with those set out in section 321 (a) (2), *supra*, which in applicable instances entitles the donor to deductions as indicated therein.

Not until November 1, 1934, approximately ten years after the trust instrument was executed and the securities were transferred and

delivered to the trustees, was there an amendment to the second article of the certificate of incorporation of "Charities, Inc." That amendment required that the administration of the gifts and grants of money and property to it should be "exclusively for charitable, educational, scientific, and philanthropic uses." The word "civic" was eliminated from said article as amended.

On November 21, 1935, shortly before the execution (December 6, 1935) by Mrs. Thatcher of her last will and testament, the second article of the certificate of incorporation of Charities, Inc., was again amended as shown in our findings of fact, the word "legacies" being added and also a provision that "no funds or property of the corporation shall ever in any way inure to be used for the benefit of any member, officer or employee of the corporation  *  *  *."

Our question is, therefore, whether the language used in the trust deed and in the original unamended certificate of incorporation of Charities, Inc., authorizes the exemption claimed under section 321 (a) (2) of the Revenue Act of 1924. Considering the conclusions to which we have come, we find it unnecessary to decide whether the trust deed or the certificate of incorporation controls. In our opinion, the language of both instruments satisfies the requirements of the statute. In both instruments it is obvious that the purposes therein set forth are exclusive for the reason that in the trust instrument "all" trust funds and property are to be devoted to the purposes named, and the purposes named in the certificate of incorporation are by law exclusive, the objects of the corporation being named and any other objects or action outside of the named objects being ultra vires. We think the expressions "benevolent corporation or one not for profit" in the trust instrument, and "charitable, educational, civic and philanthropic uses" in the original certificate of incorporation, when construed with the breadth and liberality required of us, fairly and plainly conform to and come within the purview and intendment of the statute. In our opinion, the statute uses the word "charitable" in its broad sense, connoting selflessness as contradistinguished from selfishness, and that it was the intent of the statute to exclude from the provisions of the gift tax those gifts or conveyances made for an unselfish, and not a private and selfish purpose. "Caritas", the etymological origin of "charitable", undoubtedly embraced broadly a meaning of regard or love for mankind. *Bok* v. *McCaughn*, 42 Fed. (2d) 616. We think the expression as used today covers and includes "civic and philanthropic", as well as "benevolent" and "not for profit"—the various expressions used in the two instruments being considered here. Each of these expressions is an attribute of charity; each negatives the idea of personal or selfish purposes. This is particularly true of the words "civic and philanthropic" when they are

used in the same phrase with the statutory expression "charitable." *Saltonstall* v. *Sanders*, 11 Allen (Mass.), 446; *In re Cunningham's Will*, 136 N. Y. S. 922; and *In re Murphy's Estate*, 184 Pa. 310; 39 Atl. 70. The word "charitable" does not appear in the trust instrument, the language there being "benevolent" and "not for profit." Inasmuch, however, as the corporation had already been formed at the date of the trust instrument, by the same parties and through the same attorney and as a part of a "single unified plan" with the execution of the trust instrument, we think the two instruments should be read together, and that the purposes of the already formed corporation are inserted into the trust instrument, and that it can not be said that the expression "charitable" is not in effect a part thereof. Independently, however, of that consideration, we consider and hold that charitable covers and includes the expressions used in both instruments. It has been said that charity covers a multitude of sins; we think it may well be considered to cover a few virtues of a character kindred to charity. In *Ould* v. *Washington Hospital, supra*, a charitable use is defined as follows:

A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social mean.

See also *Rotch* v. *Emerson*, 105 Mass. 431; *St. Louis Union Trust Co.* v. *Burnet, supra;* 48 C. J. 1054; *Fox* v. *Gibbs*, 86 Me. 87; 29 Atl. 940; *Gossett* v. *Swinney*, 53 Fed. (2d) 772, 777; and *Union & New Haven Trust Co.* v. *Eaton*, 20 Fed. (2d) 419.

The word "civic" has been included within the meaning of charitable upon consideration of a charitable deduction for income tax purposes, where the expression used was "either civic, charitable or benevolent" purposes. *Johnson* v. *United States*, 8 Fed. Supp. 842. The word "public," considered in *Michigan Trust Co.* v. *United States*, 21 Fed. Supp. 482, and *Jackson* v. *Phillips*, 14 Allen (Mass.), 539, 556. includes among charities the erection or maintenance of public buildings or works or otherwise lessening the burdens of government. *Webster* v. *Wiggins*, 19 R. I. 73; 31 Atl. 824, characterizes as charitable funds those from private gift, for any legal or public purpose. *In re Estate of Graves*, 242 Ill. 23; 89 N. E. 672, considered as charitable a gift to erect a public drinking fountain for horses. Benjamin Franklin's will, providing a fund to be expended in building or procuring public works to promote the convenience and comfort of the people of Boston, was held a valid charitable gift. *City of Boston* v. *Doyle*, 68 N. E. 851.

Furthermore, though under the above authorities we do not think it is necessary to this opinion, we believe that the use of the word "civic" comes within that portion of the language of the statute

exempting gifts to or for the use of a state or political subdivision thereof. In its origin, the word "civic" means that which has to do with the state (civis, meaning citizen; civitas, meaning state). It seems plain, therefore, that any civic matter has to do with a "state or a * * * subdivision thereof", within the language of the statute, and we do not think this view is inconsistent with the not uncommon use of the word "civic" in connection with matters of a city or town. Although under some jurisdiction cities are not political subdivisions of the state in a technical sense, yet obviously within the broad meaning of the term, as indicated by its origin, they are a part of the state. For this additional reason, therefore, we believe that the word "civic" is to be included within the connotation of "charitable."

In the light of the above conclusions, it is unnecessary to pass upon the question as to whether the intention of the trust instrument may be gathered from circumstances outside of the instrument itself, or to decide whether, if the trust instrument did not provide for charitable use, it was void for indefiniteness and, therefore, as a resulting trust was not subject to gift tax; although under primary principles of interpretation of instruments it would appear that the trust instrument would be subject to explanation by evidence dehors the instrument itself, and although the Colorado statute under which the validity of the trust would be determined apparently provides, by section 5161.1, Compiled Laws of 1932, that indefiniteness or uncertainty of beneficiary does not invalidate a gift for such charitable purposes as herein involved.

In our opinion, the respondent's contention, that to include within the intendment of the statute the expressions involved in the instruments here being considered would be beyond proper bounds of judicial interpretation, is not well founded, nor do the cases cited control. We have here for interpretation words of general import, and we consider it wholly within the bounds of proper principles of interpretation to ascertain whether the general expressions of the statute cover and include those of the instruments here involved.

After full consideration of the record herein and briefs of counsel citing numerous authorities, examined though all not discussed, we are of the opinion and hold that the value of the remainder interest of the aforesaid trust in the securities transferred and delivered by petitioner to, and accepted by, the trustees of Charities, Inc., on December 30, 1924, is allowable as a deduction from the total amount of the gifts involved herein. The action of the respondent in disallowing the claimed deduction of said remainder interest, $397,513.06, is accordingly disapproved.

The parties have stipulated that if the Board should determine that the gift (so far as concerned the remainder of the life estate

in the property transferred in trust) constitutes an allowable deduction from the total gifts made by the petitioner in the year 1924, then the deficiency in gift tax is $372.81. We therefore hold and determine that there is a deficiency in gift tax in this proceeding in the sum of $372.81.

*Decision will be entered redetermining the deficiency in gift tax to be the amount of $372.81.*