## Funk's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

668

*Francis X. McClanaghan,* for exceptants.

*John E. Stevenson,* Special Deputy Attorney General, and *Howard S. Okie,* contra.

VAN DUSEN, P. J., December 11, 1942.—We cannot think of any use to which this money could be put which would fulfill the description "worthy cause or institution" which would not also be properly designated as a public charitable use. In Wilbur's Estate, 334 Pa. 45, 77, the language was "to such persons, corporations and public charities or whatsoever as they may deem fit" which would permit distribution of the fund to private persons; and so would the language in Beck's Appeal, 116 Pa. 547, "to such objects, persons or institutions as in his discretion shall be best and proper".

The exceptions are dismissed and the adjudication is confirmed absolutely.

BOLGER, J., dissenting.—The exceptions are directed to the construction placed upon the residuary clause of testatrix' holographic will, wherein she provides "the rest to be given to some worthy cause or institution". This phrase was held to constitute a charitable bequest. Exceptant, the sole remaining next of kin, maintains the gift is void, not because a trustee is not named, but for uncertainty—that the nature of testatrix' bounty is indefinite in that the nomination by a trustee when appointed might be for other than charitable purposes, and still accord with the disputed provision.

The authorities have separated gifts of this type into two groups which are distinguished by Strong, J., in The Domestic and Foreign Missionary Society's Appeal, 30 Pa. 425, 435:

"A court can know the class, but individual designation is left to the trustee, who is the dispenser of the bounty, and who is under obligation to dispense within the class."

He thus divides the questions into (1) the class of the gift, and (2) designation by a trustee of one or more objects within the limits of the class.

The second of these questions presupposes that the "court can know the class", i. e., that the determination of the class is not involved, but only the selection of one or more objects within the class; whether the testator names no special objects within such class or names them in an indefinite or uncertain manner is immaterial. This clearly is not our problem. The first question which is before us is the ascertainment of "the class" of gift—for "the court to know".

It is maintained by the Animal Rescue League of Philadelphia, a prospective beneficiary, and by counsel for the Commonwealth, that the class is charitable. To be charitable it must be "a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government": I Hunter's Pennsylvania Orphans' Court Commonplace Book 86, 87.

Being sensible of the present universal appeal of charity and of the appropriate favor with which the law courts regard it (Daly's Estate, 208 Pa. 58), one would naturally expect to find, upon examination, that whatever presumptions are to be employed in seeking the solution of the case would be in that direction. Unfortunately, however, such is not the fact.

In Wilbur's Estate, 334 Pa. 45, 78, the will gave to "Kate E. Wilbur, and my son, Robert E. Wilbur . . . full and complete right and power of distribution of the same to such persons, corporations and public charities or whatsoever as they may deem fit having full trust and confidence in them both or either of them that they will fully carry out and perform the wishes that I have upon the subject and fully known to them."

The court said:

"The power given is to dispose 'to such . . . as they may deem fit.' The precatory words made no one a beneficiary. The award to 'Robert E. Wilbur and such person as shall be chosen by him as trustee' cannot be sustained. If testator intended to create a trust, he failed to complete the expression of the intention. Who was the beneficiary? What 'persons'? What 'corporations'? What 'charities'? There is no evidence of any contract with his wife and son. While a bequest 'among such charitable institutions' as executors were authorized to designate has been sustained, we approved the statement that 'if it [the discretion] can by any possibility be exercised outside of the limits of that definition [as a charity] it is invalid': *Kinike's Estate*, 155 Pa. 101, 25 A. 1016. Here the words of the testator allow a choice outside the limits of the rule; *Beck's Appeal*, 116 Pa. 547, 9 A. 942, is another illustration."

The decision accords with the A. L. I. Restatement of Trusts, §398, comment (*b*) :

"Where a testator devises or bequeaths property to be applied by the devisee or legatee in his discretion for 'benevolent' purposes, or 'liberal' purposes, or 'public' purposes, or 'useful' purposes, or 'philanthropic' purposes, it is a question of interpretation whether the intended purposes are limited to charitable purposes. If not so limited, the intended trust fails."

The reason for the rule is well stated in Witman v. Lex, 17 S. & R. 88, 91:

". . . if the bequest be on a trust not defined with reasonable certainty, it will fail; for it is clear the testator did not intend that the trustee should have the beneficial interest."

The justification for this apprehension is illustrated in Beck's Appeal, 116 Pa. 547. There the executor was given power to dispose of residue "to such objects, persons or institutions as in his discretion shall be best and proper". It was held that an appropriation by him to himself "subject to such further uses as he might thereafter by his last will and testament appoint" was valid. It follows that the courts are powerless to prevent such avarice, so the law therefore strikes down the entire gift—probably as the less of two evils created by testator's failure to give adequate expression to the disposition of his bounty.

Thus we see that, for the gift to be classified as charitable, its ultimate purpose must be to benefit an indefinite number of persons, but that the language fixing the class of persons or objects to be benefited must be definite and certain.

In deciding whether the language of this will allows such latitude of designation, we are guided by other and more closely related illustrations.

In Murphy's Estate, 184 Pa. 310, 311, "The balance of my estate . . . to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors, or their successors" was held not void for uncertainty.

In Dulles' Estate, 218 Pa. 162, 164, the gift was "among such religious charitable and benevolent purposes and objects or institutions as in their discretion . . . "; held a valid trust.

Anderson's Estate, 269 Pa. 535, is cited. There the will directed "executors . . . to distribute said residue among such institutions or do such acts of charity". The court said the construction was not unusual be-

cause "charity" standing alone might occasionally be used by some in a different sense but "acts of charity" hardly could be.

In Kirchner's Estate, 39 D. & C. 510, a gift to the "home", in which testator's wife died, was held to be not charitable. No doubt he must have regarded such home as a worthy cause or institution because it cared for his helpless widow, else he would not have given it half of his residuary estate. See also Wilbur's Estate, supra.

The majority opinion subscribes to the inescapable conclusion of the adjudication that there is no worthy cause or institution in the world except within the bounds of charity. Such a lamentable description of our social structure constitutes an unjust indictment against which I vigorously protest.

"Worthy" necessarily means "not unworthy". A cause generally speaking is a project undertaken by an individual or a group of persons—an "institution"— or the moral or social character, condition or circumstances of a person, of a people, or of inanimate objects, collectively or individually. For such cause or causes to be worthy it must appear that they are as stated, meritorious, virtuous, estimable; and the definitions expressly state a worthy cause may relate to individuals or objects—in a word, of a class totally devoid of the legal characteristics of charity.

Noncharitable but worthy causes may include persons or institutions operated for profit or not, such as "homes" as described, trade associations, labor unions, fraternal societies, clubs and individuals. Splendid classifications of charitable and noncharitable uses appear in Hunter's Pennsylvania Orphans' Court Commonplace Book, pages 88 to 94, inclusive. Analysis of the definition of the word "institution" offers many possibilities of noncharitable purposes: "That which is instituted or established, an established order, prin-

ciple, law or usage . . ." especially may well come within the same categories as hereinbefore outlined under "cause". These and many others all meet the requirements stated in the will, and many are beyond the bounds of charity.

The possibility that a trustee when appointed could, with full propriety, appoint to some such as are beyond the bounds of charity unfortunately invalidates the gift.

The adjudication indicates that the peculiar position of the legacy in question in the will supports the inference that testatrix intended the gift for charitable purposes. Legally, the case for charity must rest on stronger ground than that of inference. Actually the inference drawn is no fairer than others, to wit, that testatrix having made one gift to charity indicated she had no interest necessarily in any other, and therefore it might go to a noncharity; or stronger yet, that testatrix having made the list of specific gifts to persons and charities she knew, acquaintance and comprehension being limited, her mind then wandered or trailed off aimlessly into the indefinite. It is against the use of such sketchy language that the rule of law involved is directed.

I am of opinion, therefore, that the attempted trust fails and that the exceptions should be sustained.

Judge Ladner joins in this dissent.