IN THE MATTER OF THE ESTATE OF KATHERINE MEIER
KUEBLER, LATE OF THE STATE OF FLORIDA.

THE FAIRVIEW CEMETERY COMPANY, A NON-PROFIT
NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v. WILLIAM KINGSLEY, DEPUTY DIRECTOR, DIVISION
OF TAXATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 14, 1969—Decided June 10, 1969.

Before Judges CONFORD, KILKENNY and LEONARD.

*Mr. Howard M. Nashel* argued the cause for appellant (*Messrs. Platoff, Heftler & Harker,* attorneys).

*Mr. T. Robert Zochowski* argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KILKENNY, J. A. D. The Fairview Cemetery Company, a nonprofit New Jersey corporation, appeals from the determination of the New Jersey Inheritance Tax Bureau, Division of Taxation, that a devise to the cemetery company, under the will of Katherine Kuebler, of some five unimproved lots in Dover Township, Ocean County, was taxable as an inheritance under *N. J. S. A.* 54:34–2(*d*). The testatrix died on October 4, 1966.

The Bureau appraised these lands at $500 and assessed a tax of $75 plus interest, for a total of $82.50, which the cemetery paid under protest on May 22, 1968. The devise was absolute and unconditional, without any limitation upon it or the use of the funds which the cemetery company expects

to receive upon the sale of the lots. Fairview Cemetery is located in Fairview, Bergen County, at or near the boundary of that community with the boundary line of North Bergen, in Hudson County.

The cemetery company claimed and still claims before us that the devise to it was exempt from inheritance tax under *N. J. S. A.* 54:34-4(*d*), which exempts from inheritance tax transfers to, or for the use of or in trust for

"any educational institution, church, hospital, orphan asylum, public library or Bible and tract society or to, for the use of or in trust for any institution or organization organized and operated *exclusively* for religious, *charitable, benevolent*, scientific, literary or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or other individual or corporation; * * *." (Italics ours)

Fairview Cemetery Company maintains that it qualifies under this exemption as a "charitable" and as a "benevolent" organization. Obviously, it does not qualify under any of the other specified categories.

Fairview Cemetery Company has operated the cemetery in Fairview for about 67 years. It is nonsectarian and has served people of all races, religions and national origins, primarily of North Hudson and East Bergen County. It has sold and continues to sell cemetery plots to all people wishing to purchase and use the same. It alleges in its brief, without reference to any proof thereof in the record, that it makes provision for the burial of people who are unable to pay for the plot or for burial charges, by either reducing the fees charged or not charging any fees.

On April 20, 1936 it was adjudged insolvent by the former Court of Chancery. Receivers were appointed and they were authorized "to carry on the business [of the cemetery] as a charitable trust." *Docket No.* 113/495. Litigation concerning this receivership is reported in *Burke v. Gunther*, 128 *N. J. Eq.* 565 (*Ch.* 1941), affirmed 133 *N. J. Eq.* 609 (*E. & A.* 1943), and *Moore v. Fairview Mausoleum Co.*, 39 *N. J. Super.* 309 (*App. Div.* 1956). On September 28, 1962 the

cemetery company was discharged from receivership by order of the Chancery Division and trustees were appointed by the court pursuant to *N. J. S. A.* 8:1–20.1.

The cemetery company advises us that there is presently outstanding and due to holders of receivers' certificates the aggregate sum of $104,150.61. There are no stockholders or holders of any other legal or beneficial interest in the cemetery association, other than the well over 10,000 plotholders. The Superior Court will retain control and select the trustees of the cemetery, audit their accounts and determine their compensation until the receivers' certificates have been paid in full. None of the present trustees has any pecuniary interest in the cemetery.

Fairview Cemetery Company has not had an operating profit since at least 1936. But there is pending in the Chancery Division an action for an accounting, for appointment of a successor trustee and for instructions. No fees have been paid to any trustee to date.

The devised lands will be sold at a public sale to the highest bidder and it is intended that the proceeds will be added to the Permanent Maintenance Fund, the income from which will be used for the general upkeep and embellishment of the cemetery and to make up operating deficits inherent in the cemetery due to its past financial history.

■ "It is well settled that a cemetery dedicated for the burial of the dead is a charitable or public trust." *Moore v. Fairview Mausoleum Co.*, 39 *N. J. Super.* 309, 314. "The cemetery, and the conduct of its affairs, is a trust, a charitable or public trust. * * * Those who administer the affairs of a cemetery are in reality trustees, and are subject to all the rules of law, respecting the duties and liabilities of a trustee." *Burke v. Gunther, supra.* Thus, as that case points out, it is contrary to our public policy to permit the trustees of a cemetery "to make for themselves a profit." 128 *N. J. Eq.*, at *p.* 571. In fact, the statute itself precludes anyone from making a profit in the operation of the cemetery. *R. S.* 8:2:11 provides that the moneys derived from all sales of plots or lots

must be first appropriated to the payment of the purchase money of the lands acquired by the cemetery, and the residue must be used for the preservation, improvement and the embellishment of the cemetery grounds, avenues and roads leading thereto and to defray the incidental expenses of the cemetery establishment.

Is a cemetery company, which sells plots and lots generally for the burial of the dead for a consideration paid to it and maintains the cemetery out of the proceeds of such sales and out of other funds received by it as maintenance charges or otherwise, a "charitable" or "benevolent" institution or organization within the meaning of *N. J. S. A.* 54:34–4(*d*)? In answering that question we note at the outset that statutes granting exemption from taxation are strictly construed and doubts as to the eligibility for exemption are resolved against the claimant. "[A] claimed exemption from taxation must find support in clear and unmistakable expressions of the legislative act." *Hopkins v. Neeld,* 41 *N. J. Super.* 345, 351 (*App. Div.* 1956). On the other hand, "strict construction does not mean a construction which begrudges. Rather it means an exemption shall not be extended beyond the ascertainable intention of the Legislature and hence an exemption must be denied if a purpose to grant it is doubtful." *Deubel v. Kervick,* 33 *N. J.* 568, 574 (1960). The burden of proving tax-exempt status is upon the claimant. *Town of Bloomfield v. Academy of Medicine of N. J.,* 47 *N. J.* 358, 363 (1966).

"The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function. * * *." *Bloomfield, supra,* at *p.* 363.

Plaintiff equates "charitable trusts" with "charitable institutions" and argues that since a cemetery is a "charitable trust" it is, therefore, a "charitable institution" and entitled to exemption from inheritance taxes. That a cemetery is a

charitable trust has oft been stated. See, too, *Terwilliger v. Graceland Memorial Park Ass'n*, 35 *N. J.* 259, 265 (1961); *Frank v. Clover Leaf Park Cemetery Ass'n*, 29 *N. J.* 193, 201 (1959). But does the claimed consequence follow that it is a "charitable institution" within the meaning of the tax exemption provision of our inheritance tax law, *N. J. S. A.* 54:34–4(*d*)?

Our law has generally not treated cemeteries as equatable with charitable institutions. Whenever it was intended to embrace a cemetery as within the orbit of a tax exemption provision, it has always been done so expressly. For example, our 1947 *Constitution, Art.* VIII, § 1, *par.* 2, refers to exemptions from taxation of real and personal property "used exclusively for religious, educational, *charitable or cemetery* purposes, as defined by law \* \* \*." (Emphasis added). Again, although *N. J. S. A.* 54:4–3.6 exempts from taxation buildings and land owned by associations or corporations organized exclusively for "charitable" and other designated purposes, a *separate* legislative provision was deemed necessary and adopted to exempt "graveyards and burial grounds \* \* \* and cemeteries." *N. J. S. A.* 54:4–3.9.

*N. J. S. A.* 54:34–4(*d*) exempted only "educational institutions" from inheritance taxes prior to the 1962 amendment of that section. It is noteworthy that the statement annexed to the 1962 bill recited:

"New Jersey is one of the few States which subjects *churches, hospitals and other charities* to taxation on gifts received by will.

The purpose of this bill is to exempt our charities from such taxation and thereby make the New Jersey law uniform with that of the other States and with the exemptions accorded by Federal law." (Italics ours)

We do not find a "cemetery" reasonably embraced within the words "churches, hospitals and other charities," either expressly or by fair implication, under the rule of *ejusdem generis*.

The statement accompanying the 1962 amendment indicates that the Legislature had given consideration to the laws

of other states and federal law in formulating the exemption, because it notes the legislative desire to "make the New Jersey law uniform" therewith. How, then, do the laws of other states and the federal law treat cemetery associations in the matter of inheritance tax exemption?

The majority of decisions by the courts of other states demonstrates that cemetery companies or associations are not deemed to be charitable institutions for the purpose of exemption under their respective taxing statutes. See *Town of Milford v. Commissioners,* 213 *Mass.* 162, 100 *N. E.* 60, 61 (*Sup. Jud. Ct.* 1912); *Bulloch v. Long,* 260 *Mass.* 129, 156 *N. E.* 743 (*Sup. Jud. Ct.* 1927); *In re Hill's Estate,* 131 *Me.* 211, 160 *A.* 916, 83 *A. L. R.* 928 (*Sup. Jud. Ct.* 1932); *Lexington Cemetery Co. v. Commonwealth,* 297 *Ky.* 851, 181 *S. W.* 2d 699 (*Ct. App.* 1944); *Christgau v. Woodlawn Cemetery Ass'n,* 208 *Minn.* 263, 293 *N. W.* 619 (*Sup. Ct.* 1940); *Industrial Comm. v. Woodlawn Cemetery Ass'n,* 232 *Wisc.* 527, 287 *N. W.* 750 (*Sup. Ct.* 1939).

*In re Hill's Estate, supra,* is illustrative. That case involved an inheritance tax exemption similar to New Jersey's. Decedent made certain bequests to the Berwick Cemetery Association and an inheritance tax was assessed against the bequests. Claim was made for tax exemption under Maine's inheritance tax law, which excepted from operation of the tax transfers "to or for the use of any educational, charitable, religious, or benevolent institution." It was held that, in dealing with cemetery corporations, the Legislature "has not regarded them as included within the statutory provisions relating to charities."

*In Town of Milford, supra,* it was held that a cemetery corporation, selling lots to members of the public generally, is not a charitable or benevolent corporation within the meaning of a statute exempting from taxation the property of "benevolent" and "charitable" institutions.

The cemetery cites *Bushong v. Taylor,* 161 *Tenn.* 522, 33 *S. W.* 2d 80 (*Sup. Ct.* 1930), as supportive of its contention that a cemetery is a "charitable institution." That case does

not so say. It holds only that a bequest in trust, the income to be expended in caring for a cemetery and church, was a charitable trust "not within the meaning of the constitutional ban on perpetuities" (at *p.* 82), and not subject to the inheritance tax payable, if the bequest passed to the residuary legatee, upon failure of the trust.

As to the federal law, the Federal Estate Tax Act, 26 *U. S. C. A.* §2055, delineates the entities transfers to which are deductible under that act. To this day Congress has not created a tax exemption for transfers to cemetery corporations. In the Internal Revenue Code, 26 *U. S. C. A.* § 501, the entities exempted from taxation for *inter vivos* gifts are specifically listed under § 501(*c*)(3) in the case of corporations organized and operated for "charitable" purposes. Deductions for cemetery companies, however, are separately listed under § 501(*c*)(13). This clearly indicates that "charitable institutions," as such, are not deemed to include "cemetery companies."

The following decisions demonstrate that under federal law the status of a company organized exclusively "for cemetery purposes" is not regarded as an institution organized exclusively for "charitable or benevolent purposes." See *Schuster v. Nichols,* 20 *F. 2d* 179 (*D. Mass.* 1927); *Wilber National Bank of Oneonta v. Commissioner of Internal Revenue,* 17 *U. S. B. T. A.* 654 (1959). As was noted in the last-cited case:

"Those who did buy lots, secure deeds thereto and have interments made therein acquired inheritable property, for which they are presumed to have paid full value and were in no sense objects of charity or the recipients of charitable gifts."

To the same effect, see *Gund's Estate v. Commissioner of Internal Revenue,* 113 *F. 2d* 61 (6 *Cir.* 1940), *and Craig v. Commissioner of Internal Revenue,* 11 *U. S. B. T. A.* 193 (1928).

The foregoing analysis of the law of other states and of federal law establishes that the probable intent of the Legis-

lature, by the 1962 amendment, was not to include cemetery companies as among the "charities" to be accorded inheritance tax exemption.

Nor does the fact than an occasional indigent may be buried free of charge make Fairview Cemetery an institution organized "exclusively" as a charitable or benevolent organization. It admittedly has 10,000 lot or plot owners who paid value for their deeds. In the cemetery's letter to the Bureau, under date of February 23, 1968, it acknowledged:

> "*Any party who pays the charges set by Resolutions of the Board of Trustees from time to time* may purchase a plot for his use in the Cemetery."

Such a policy negates an "exclusively" charitable purpose.

The Division of Taxation concedes that, generally, the word "benevolent" is considered to be synonymous with the word "charitable." It cites in support thereof *Hight v. United States,* 256 *F.* 2d 795 (2 *Cir.* 1958) ; *Union & New Haven Trust Co. v. Eaton,* 20 *F.* 2d 419, 421 (*D. Conn.* 1927) *In re Murphy's Estate,* 184 *Pa.* 310, 39 *A.* 70 (*Sup. Ct.* 1898) ; *In re Snell's Will,* 154 *Kan.* 654, 121 *P.* 2d 200, 203 (*Sup. Ct.* 1942) ; *Ministers and Missionaries Benefit Board of Northern Baptist Convention v. Thayer-Martin,* 118 *N. J. L.* 465 (*Sup. Ct.* 1937) ; *Pitney v. Bugbee,* 98 *N. J. L.* 116 (*Sup. Ct.* 1922). This being so, the State limits its argument to the term "charitable" in the tax exemption provision. So, too, plaintiff cemetery company does not find any specific value to it in the word "benevolent" and relies essentially on the word "charitable" in the statute as the basis of its claim for exemption. Accordingly, we need not consider the word "benevolent" as material to the issue herein.

For the reasons above stated, we affirm the determination of the State Inheritance Tax Bureau, Division of Taxation, and hold that Fairview Cemetery Company was properly denied its claim of inheritance tax exemption.