ELIZABETH ADYE AND OTHERS *vs.* GEORGE F. SMITH, EXECUTOR.

A will, having created a trust, and given sundry legacies under the trust, made the following provision with regard to the residue: "It is my will that said trustee shall dispose of such remainder for any and all benevolent purposes that he may see fit." Held to be void for uncertainty.

It does not help the will in such a case for the trustee to designate certain charitable purposes to which he proposes to apply the property. The question is not whether the trustee may apply the estate to such purposes, but whether he is bound to do so.

AMICABLE SUBMISSION upon an agreed statement of facts; made to the Superior Court in New Haven County.

Anna M. Adye of New Haven died on the first day of November, 1874, leaving a will, duly executed on the 31st day of August, 1859, which contained the following clauses:

"After the payment of my just debts, my funeral expenses, and the expenses of settling my estate, and the expenses of a suitable grave stone or monument to be erected to my memory, I give, devise and bequeath, to George F. Smith, of said New Haven, all the rest, residue and remainder of my estate of every description whatsoever, and wheresoever the same may be situated, to him the said George F. Smith and his

heirs in fee simple; in trust, however, for the uses and purposes hereinafter mentioned, namely, upon the trust to invest the principal of said trust estate, and to pay from the rents, profits and income thereof, to my brother, Nathan Stoddard Adye, or for his benefit, such sum or sums, and at such time or times, as the said trustee shall deem expedient or necessary for the comfortable maintenance and support of my said brother. * * * Upon the decease of my said brother, if there shall remain any of the estate hereinbefore given, devised and bequeathed in trust for his benefit, it is my will that the said trustee shall dispose of such remainder for any and all benevolent purposes that he may see fit, and at his option."

The will was duly proved after the death of the testatrix, and George F. Smith, the trustee, who was appointed executor by it, accepted the trust and proceeded to settle the estate. Nathan S. Adye, named in the will as the brother of the testatrix, died before her death. Four nephews and nieces, who were parties to the submission, are her heirs at law. There remains in the possession of the executor, after payment of all just debts and charges, property, both real and personal, to the value of, in all, about ten thousand dollars. The heirs at law claim that the estate so remaining belongs legally, and if not legally, then equitably, absolutely and in fee simple, to them; and that the executor, if he holds the same in trust, holds it in trust for them. The executor denies the validity of this claim, and claims that the estate is vested in him in trust to dispose of it "for any and all benevolent purposes that he may see fit, and at his option," and is ready and desirous to dispose of it for certain benevolent purposes, selected by him, as soon as the case is decided.

Upon these facts the case was reserved for the advice of this court.

*H. B. Harrison* and *J. O'Neil*, for the plaintiffs, cited *Morice* v. *Bishop of Durham*, 9 Ves., 404; *Same* v. *Same*, 10 id., 522; *James* v. *Allen*, 3 Mer., 16; *Vezey* v. *Johnson*, 1 Sim. & Stu., 69; *Ellis* v. *Selby*, 1 Mylne & Cr., 286; *Williams* v.

*Kershaw,* 5 Clark & Fin., 111; *Kendall* v. *Granger,* 5 Beav., 300; *Ommany* v. *Butcher,* 1 Turn. & Russ., 261; *Chamberlin* v. *Stearns,* 111 Mass., 267; *Norris* v. *Thompson,* 19 N. Jersey Eq., 307; *Thompson* v. *Norris,* 20 id., 489; *Grimes* v. *Harman,* 35 Ind., 198; *Lepage* v. *Macnamara,* 5 Iowa, 124; *Needles* v. *Martin,* 33 Maryl., 609; *Attorney Gen.* v. *Soule,* 28 Mich., 153; *Bridges* v. *Pleasants,* 4 Ired. Eq., 26; *Gallego* v. *Attorney Gen.,* 3 Leigh, 450; *Carpenter* v. *Miller,* 3 W. Virg., 174; *Wheeler* v. *Smith,* 9 How., 55; *Phelps* v. *Phelps,* 28 Barb., 121; *Goddard* v. *Pomeroy,* 36 id., 546; *Levy* v. *Levy,* 33 N. York, 97; *Bascomb* v. *Albertson,* 34 id., 584; Perry on Trusts, §§ 692, 708 to 713; Tiff. & Bullard on Trusts, 237; 2 Story Eq. Jur., §§ 1183, 1155 to 1158; 2 Redf. on Wills, ch. 15, §§ 10, 16, 18, 81; *White* v. *Fisk,* 22 Conn., 31, 54; *Treat's Appeal from Probate,* 30 id., 111, 116.

*S. E. Baldwin,* for the defendant.

1. Considered as a charitable trust, the bequest is valid by the law of this state. It is now settled that the jurisdiction of chancery over cases of charitable uses existed long before the statute of 43 Elizabeth, and that this statute, instead of enlarging, has had the tendency to restrict the equitable powers of the courts. Although enacted simply to give a new remedy for enforcing certain charitable trusts in cases of misappropriation, the English courts have construed it as limiting them to the recognition only of such trusts as are mentioned in the statute, or as are plainly germane to those. *Vidal* v. *Girard's Exrs.,* 2 How., 192, 196; *Miller* v. *Rowan,* 5 Clark & Fin., 99, 109; *Hamden* v. *Rice,* 24 Conn., 355; 2 Story Eq. Jur., §§ 1155, 1164. These trusts are the following only: " for relief of aged and impotent and poor people; for maintenance of sick and maimed soldiers, schools of learning, free schools, scholars in universities, houses of correction; for repairs of bridges, of ports and havens, of causeways, of churches, of sea banks, of highways; for education and preferment of orphans, for marriage of poor maids, for support and help of young tradesmen, of handicraftsmen, of persons decayed; for redemption or relief of prisoners or captives,

for ease and aid of poor inhabitants; concerning payment of fifteenths, setting out of soldiers and other taxes." In a later part of the act the commissioners whom it authorizes to inquire into misappropriations of trust funds are referred to this enumeration of objects, by limiting their inquiries to "any of the charitable and godly uses therein rehearsed." It is *in pari materiâ* with the other statute of the same year, 43 Eliz., c. xii, creating a commission to decide all claims on policies of marine insurance. The object of both was limited to enforcing specified and existing rights. The statute of Elizabeth was never recognized in Connecticut, nor any of the English mortmain statutes which have had so great an effect in fettering charitable dispositions by will in Great Britain. Our own ancient statute of charitable uses provides, in much more generous terms, that "all estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for *any other* public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the *true intent and meaning of the grantor,* and to no other use whatever." Gen. Stat., p. 352, sec. 2. In the construction of this statute, therefore, the court cannot limit itself to any specified classes of uses, such as are enumerated in the statute of Elizabeth. Any use which is public *or* charitable, (for such seems to be the true construction of the act,) is entitled to recognition. *Fuller* v. *Plainfield Academic School,* 6 Conn., 544; *Hamden* v. *Rice,* 24 id., 355; *Proprietors of White School House* v. *Post,* 31 id., 255. If the word *charitable* had been used by the testatrix, instead of the word *benevolent,* no question could have been raised. But, whatever may be the case in England, these words are in Connecticut used in common parlance as nearly, if not quite, synonymous. Among the meanings given in Webster's dictionary to the word "benevolence," are "charitableness," "good done," "charity given." So under "benevolent," Webster says: "By degrees the word benevolent has been widened to include not only feelings but actions. Thus we speak of benevolent operations, benevolent labor for the public good,

benevolent societies." *Saltonstall* v. *Sanders*, 11 Allen, 446, 468. *Benevolent* is constantly used as the synonym of *charitable* in our statutes. There are numerous instances of this in our private acts, and we refer to a few of them. 3 Private Laws, 301, 306, 307, 317, 318; 5 id., 268, 457, 682, 688, 747; 6 id., 10, 71, 98, 149, 224, 365, 633. And see title "Benevolent Societies" in the index of Vol. 6 of the Private Laws. See also Private Acts of 1871, p. 73; Private Acts of 1872, pp. 235, 236, 315; Private Acts of 1873, pp. 12, 93; Private Acts of 1874, p. 209. See also the use of the word *benevolent*, by HOSMER, C. J., in *American Asylum* v. *Phœnix Bank*, 4 Conn., 177, 178. It cannot be doubted that "the true intent and meaning" of the testatrix was that this property should go to charitable uses, and the executor is ready so to apply it. To follow any English precedents, in denying effect to her bounty, because it might enure to the benefit of objects not specified as "charitable and godly" in a certain statute passed in another country at the close of the middle ages, would be to deny the power of language to expand, or of social needs and sympathies to widen their scope, in the progress of human advancement. The prevention of cruelty to animals, the establishment of public parks, bathing-houses, fountains, cemeteries, libraries, historical collections, art galleries and museums, the foundation of inebriate asylums, and many other objects, might be mentioned, which are not within the purview of the statute of Elizabeth nor of the civilization of that day. "Benevolent purposes," if not always "charitable," are certainly generally such, and the phrase should be construed to mean that which will support the will rather than defeat it. *Rotch* v. *Emerson*, 105 Mass., 431, 434; *Bruce* v. *Presbytery of Deer*, L. Reps., 1 H. L., Scotch & Div. Appeal Cas., 96. "Not professing to found our jurisdiction on the statute of Elizabeth, we are not bound, like the English courts, to restrain it to cases especially enumerated in the preamble; and there is, therefore, little hazard in affirming that a bequest such as in *Morice* v. *Bishop of Durham*, 9 Ves., 399, in trust to pay debts and legacies, and to dispose of the residue to such objects of benevolence and liberality as the

legatee may approve, would be sustained here." *Witman* v. *Lex*, 17 Serg. & R., 93. The more recent English decisions also show a tendency to disapprove the doctrine of *Morice* v. *Bishop of Durham*, and refuse to recognize it, in any cases not controlled by English law. *Whicker* v. *Hume*, 14 Beav., 509; *S. C.* on appeal, 7 Clark H. L. Cas., 124. And it will be presumed, in support of the will, that the executor will apply the fund to such benevolent purposes as are strictly charitable, rather than to such, if any, as are not such. *Lewis* v. *Allenby*, L. Reps., 10 Eq. Cas., 668. It must be borne in mind that the objection is not, that the will creates a *perpetuity* for a purpose not charitable, since the disposition of the fund may be immediate; nor that the objects to be benefited are not specified, for a full power of appointment is given, and *id certum est, quod certum reddi potest;* but only that if the executor should apply the money to purposes not benevolent, no court could restrain the misappropriation. Our answer to this is, first, that a misappropriation will not be presumed, and is negated by the record; and, secondly, that as the term *benevolent purposes* is used and understood in Connecticut, it has a meaning sufficiently clear to justify a court of equity in restraining any appropriation of the fund for other purposes. If a provision for charitable purposes "can by possibility be upheld, then it can never be pronounced void for uncertainty." *Bull* v. *Bull*, 8 Conn., 51; *White* v. *Howard*, 38 id., 366. The testatrix had the right, in her lifetime, to make Mr. Smith the almoner of her bounty, and why could she not as well substitute his judgment for her own, after her decease, with no other restriction than that the objects benefited must be such as they both well understood to be meant by the term *benevolent?* "It is familiar law that a testator may confer on executors and on others, absolute power of appointment and disposition over his property." *Wait* v. *Huntington*, 40 Conn., 9, 11; *Treat's Appeal from Probate*, 30 id., 113, 116; *Birchard* v. *Scott*, 39 id., 63, 68, 69. In *White* v. *Howard*, 38 Conn., 366, the court strongly intimated that a devise to a voluntary association, organized for "the diffusion of gospel truth in the Southern and South-

western States, to be accomplished under the direction of ecclesiastical bodies, or missionary organizations of an evangelical character, existing within said states," would, if necessary, have been sustained for these purposes, even although no trustee had been named in the will with capacity to take.

2. A resulting trust for the heirs at law can be inferred only when a trust is clearly created, which proves ineffectual, and leaves the trustee a beneficial interest, which the will did not intend to give him. By construing *benevolent* as equivalent to *charitable*, a valid trust would be created; but if necessary to uphold the will, the devise and bequest to Mr. Smith could be regarded as an absolute one. He is not expressly constituted a trustee for these particular "benevolent purposes." The trust was "for the benefit of" the brother, who, had he lived, might have consumed the principal. On his death, the testatrix empowered the trustee to dispose of the residue of the fund left in his hands, "for any and all benevolent purposes that he may see fit, and *at his option.*" Mr. Smith, as is shown by the record, has in fact selected various charitable societies among which to distribute it, but it might be claimed, in order to defeat a resulting trust, that he had the absolute right to dispose of the fund "at his option," treating it like the case of a legacy for the purpose of buying a mourning ring, or advancement in marriage, which conveys an absolute title. His designation in the particular clause in question as "said trustee," may be construed as a mere clause of description, and the whole provision as amounting only to a "modus," intended to express the mode of enjoyment which the testatrix thought would probably be most agreeable to the legatee, but not to control his own preferences. *Harper* v. *Phelps*, 21 Conn., 269.

LOOMIS, J. The testatrix by her last will appointed a trustee and attempted to dispose of the remainder of her estate in trust by the use of the following language: "It is my will that said trustee shall dispose of such remainder for any and all benevolent purposes that he may see fit, and at his option."

The question is, whether this language is sufficiently certain to uphold the trust, and divert the estate from the lawful heirs.

If this disposition is tested by the common law rules it is clearly invalid. By the common law there cannot be a valid bequest to an indefinite object, or a valid use without an ascertained cestui que trust. There must be a beneficiary, indicated in the will, capable of coming into court and claiming the benefit of the bequest. If the language is so indefinite that the court cannot ascertain who the cestui que trust is, it is the same thing as if there was none, and the property goes directly to the next of kin. And such a defect cannot be cured by any action on the part of the trustee, for the testator must for himself define the objects of his bounty and cannot delegate this power to another.

But while such are the established rules of the common law, it is conceded that in England a peculiar system of jurisprudence has grown up in disregard of these rules, whereby certain indefinite charitable gifts have been upheld by the exercise of chancery powers and the royal prerogative of the crown.

This system found its embodiment, if not its origin, in the statute of the 43d of Elizabeth, which specifically mentioned certain trusts to be upheld and executed by the Lord Chancellor, which trusts in the latter part of the act were referred to and characterized as "charitable and godly uses."

Ever since the enactment of this statute the word "charitable," when used in a will conveying property, has had a technical meaning, not only in England, but in this country as well, even in those states where the statute has never been re-enacted, or adopted by usage. And it may be remarked that in general the decisions of the English chancery upon trusts for charity have furnished the general rules of adjudication in the courts of the United States.

It will not therefore be amiss to inquire whether the trust now in question could stand if tested by the statute of Elizabeth and the decisions of the English courts.

Sir William Grant, the Master of the Rolls, in his opinion

in *Morice* v. *The Bishop of Durham*, 9 Vesey, 399, said: "I am not aware of any case in which a bequest has been held charitable, where the testator has not used that word to denote his general purpose or specified some particular purpose which this court has determined to be charitable." In that case the testatrix by her will directed that the residue of her estate "should be applied to such objects of benevolence and liberality as the Bishop of Durham in his own discretion should most approve." It was held that this language was too indefinite to uphold the trust, upon the ground that benevolence and liberality could find numberless objects not included among the charities mentioned in the statute. This decision was affirmed by the Lord Chancellor on appeal, and is again reported in the 10th of Vesey, 521.

In *Vezey* v. *Jamson*, 1 Simons & Stuart, 69, where the estate was given to the executors in trust to dispose of at their discretion, either for charitable or public purposes, the trust was held too general and indefinite to be executed.

To the same effect was the decision in *Ellis* v. *Selby*, 1 Mylne & Craig, 286, where the fund was applied "to and for such charitable or other purposes as his trustees should think fit."

In *Williams* v. *Kershaw*, 5 Clark & Finnelly, 111, a direction by a testator to his trustees to apply the estate "to and for such benevolent, charitable and religious purposes as they in their discretion should think most advantageous and beneficial," was held void for uncertainty.

In *James* v. *Allen*, 3 Merivale, 15, it was held that a bequest in trust "for such benevolent purposes as the trustees may unanimously agree upon," could not be sustained, on the ground that there were benevolent purposes which the court could not construe to be charitable; and the trustees being directed to apply the property to benevolent purposes might select objects not charitable within the statute.

To the same effect is the reasoning in *Kenall* v. *Granger*, 5 Beavan, 300, and in other cases that might be cited, but the above will suffice to show that the trust in question must be held void in the light of the English decisions.

If now we pass to the decisions of the courts of last resort in the United States we shall find that such indefinite trusts as the testatrix here attempted to create have repeatedly been held void for uncertainty. An examination of the numerous cases cited in the brief for the plaintiff will abundantly sustain this position. We will only refer particularly to one of these cases, which is from an adjoining state whose system of jurisprudence relative to trusts for charity is similar to our own, and in which case the testator in attempting to create a trust used words almost literally identical with the language now under consideration. It is the recent case of *Chamberlain and others* v. *Stearns and others*, 111 Mass., 267. Gray, C. J., in delivering the opinion said: " The question presented by this case is, whether a devise in trust to be applied solely for benevolent purposes in the discretion of the trustees creates a public charity. And we are all of opinion that it does not. The word 'benevolent' of itself, without anything in the context to qualify or restrict its ordinary meaning, clearly includes not only purposes which are deemed charitable by a court of equity, but also any acts dictated by kindness, good will, or a disposition to do good, the objects of which have no relation to the promotion of education, learning or religion, the relief of the needy, the sick or the afflicted, the support of public works, or the relief of public burdens, and cannot be deemed charitable in the technical and legal sense. The only difference of opinion in the adjudged cases on this subject has been upon the question how far the word 'benevolent,' when used to describe the purposes of a trust, could be deemed limited in its meaning by being associated with other words more clearly pointing to a strictly charitable disposition of the fund."

Having shown that the trust in question would be held void upon the principles adopted in England and in our sister states, we will next inquire whether there is anything peculiar to our own system relative to trusts for charity that can save and enforce the bequest we are considering.

This state has never adopted the statute of Elizabeth. But we have a substitute statute of our own, first passed in 1684,

but which did not appear in the printed statutes until 1702, and hence it has been generally called the "statute of 1702." The language of the act is as follows: "All estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for any other public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever." Gen. Stat., Revision of 1875, p. 352, sec. 2.

Our law is more strict than the English law in this, that it requires certainty in the persons to be benefited, or at least a certain and definite class of persons with an ascertained mode of selecting them. But the law of England in those cases where the statute applies, or where the doctrine of *cy pres* may be invoked, does not require any such certainty. *Treat's Appeal from Probate*, 30 Conn., 111.

In *White* v. *Fisk*, 22 Conn., 31, the doctrine of *cy pres* was repudiated, as founded originally on kingly prerogative, and as inconsistent with the provisions of our statute. In that case a bequest in trust, "for the support of indigent pious young men preparing for the ministry in New Haven, Connecticut," was held void for uncertainty. CHURCH, C. J., in giving the opinion of the court, after citing the closing part of the statute, which provides that the estates given to charitable uses "shall ever remain to the uses to which they have been or shall be given or granted, according to the *true intent and meaning* of the grantor, and to no other use whatever," says that "to carry out this provision of the law the intention of the donor must be certain, as well as the objects of his bounty reasonably definite, and the charity confined to the very use to which it was destined."

In the case under consideration the words used to express the trust lack every element of certainty heretofore required in this state. There is no certain beneficiary, no definite class, no ascertained mode of selection, and no certainty and no limitation in the purpose of the trust except as found in the world-wide field of benevolence; a realm as broad at least

as the human race, and which may embrace even the domestic animals, for such even are now justly considered the legitimate objects of human kindness and protection.

It is conceded that there is nothing in the language of the bequest we are considering to bring the case within the provisions of our statute, unless the word "benevolent" as used in the will, is of the same import as the word "charitable" as used in the statute.

While it is true that there is no charitable purpose which is not also a benevolent purpose, yet the converse is not equally true, for there may be a benevolent purpose which is not charitable, in the legal sense of the term. We have already seen that the word "charitable," as used by the English courts and the courts of the United States, has a technical meaning. Our statute was passed nearly a century after the statute of Elizabeth and after the word "charitable" had received a definite meaning from a long line of the highest judicial opinions. When therefore our legislature, in framing an act on the same subject, deliberately used the same word to characterize the trusts they wished to protect and enforce, there can be no doubt that the word "charitable" was used in the same technical sense it had acquired under the famous act of the mother country.

This rule of construction was virtually adopted by this court in the case of *Hamden* v. *Rice*, 24 Conn., 350.

The foregoing considerations have led us to the conclusion that the apparent trust in the will, "for any and all benevolent purposes," is void for uncertainty, and that the estate in question, upon the death of the testatrix, vested in her heirs at law.

The finding shows that the trustee has made a statement of the purposes for which he intends to dispose of said funds, and if such purposes had been specified in the will it would have been valid. But no action or statement on the part of the trustee can avail in the least to cure a radical defect in the will. It is the will of the testatrix, not that of the trustee, which is to stand or fall. And to use the language of Sir William Grant in *Morice* v. *The Bishop of Durham*, "the

question is not whether the trustee *may* apply the estate upon purposes strictly charitable, but whether he is *bound* so to apply it."

We advise that the property in dispute be distributed to the heirs at law of the testatrix.

In this opinion the other judges concurred.