EDWIN PAUL COCHRAN ET ALS., EXECUTORS (ESTATE OF
ALICE F. COCHRAN) *v.* CHARLES J. MCLAUGHLIN,
TAX COMMISSIONER, ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued January 7—decided February 17, 1942.

*Charles M. Lyman,* with whom was *Albert M. Chandler,* of the Massachusetts bar, for the appellants (plaintiffs).

*Louis Weinstein,* assistant inheritance tax attorney, with whom, on the brief, were *Francis A. Pallotti,* attorney general, *Frederick W. Dauch,* deputy tax commissioner, and *Harry L. Brooks,* assistant attorney general, for the appellees (defendants).

MALTBIE, C. J. Alice F. Cochran, who died at New Haven in 1939, in her will provided that a trust fund of $200,000 should be established, the income to be paid to her husband and at his death the principal to be paid "to such charitable, benevolent, religious or educational institutions as my said trustees, or their successors, may determine." She also disposed of the residue of her estate as follows: "All the rest and residue of my estate, real and personal, of which I shall die seized or possessed or to which I shall be in any way entitled or over which I shall have any power of appointment at the time of my decease I give, devise, bequeath and appoint to such charitable, benevolent, religious or educational institutions as my executors hereinafter named may determine." The executors allege in the complaint their belief that the essential intention of the testatrix in making these provisions could not be carried out if the selection of

the ultimate beneficiaries was to be made within any reasonable time for the administration of the estate, but that her intention could best be effectuated if the selection could be extended over a reasonable period of years. They, therefore, propose the organization of a corporation to receive the funds, and annex to the complaint a form it might take. The name of the corporation would be the Elm City Charity Fund; the purposes would be to receive and collect funds exclusively for charitable, religious and educational purposes, and to pay the same from time to time to such charitable, religious and educational institutions, wherever situated, as might be selected by the corporation; provision is made against private gain to any person connected with the corporation except reasonable compensation for the services rendered; should the corporation be dissolved, the property would be paid to such charitable, religious or educational institutions as it might select; and the members would be the executors and such other persons as might from time to time be constituted members under by-laws adopted by the corporation. The plaintiffs requested a declaratory judgment determining (1) whether such a corporation would be a proper beneficiary under the provisions quoted from the will; (2) whether the executors could properly turn over the property to that corporation in fulfillment of those provisions; (3) whether the property so turned over would form a part of the net estate of Alice F. Cochran upon which succession and estate taxes would be based; and (4) whether or not any class of beneficiaries would be included under the designation "benevolent" which did not fall within the word "charitable" as used in the will.

The trial court found that prior to the death of Mrs. Cochran one of the executors talked with her with re-

gard to her philanthropic plans and was given a list of institutions in which she was interested, a copy of the list being made a part of the finding. The purposes and nature of some of the institutions named are so much a matter of general knowledge that we can take judicial notice of them; *Roden* v. *Connecticut Co.*, 113 Conn. 408, 415, 155 Atl. 721; *McCleave* v. *Flanagan Co.*, 115 Conn. 36, 38, 160 Atl. 305; while the very names of others may be assumed fairly to indicate the scope of their activities. With very few exceptions, the institutions upon the list were apparently engaged in actually administering funds in their possession for education, assistance or relief. One, however, the "Fund for Near East Colleges," we apprehend distributes money to various colleges, and another, the "New Haven Foundation," may also be engaged in distributing money to institutions which directly administer relief or assistance. The trial court also found that during the year 1939 the executors duplicated the donations made by the testatrix in 1938, all of which donations were within the class of gifts for charitable, educational and religious purposes; and that during the year 1940 they made substantial donations, leaving out some of those to whom gifts were made in 1939 and adding certain others. It also found that the essential intention of the testatrix could be carried out if the selection of the beneficiaries was completed within a reasonable time for the administration of her estate. The net estate of the testatrix, exclusive of the remainder interest in the trust fund for her husband, amounted at the time of trial approximately to one million dollars. The trial court answered the first two questions stated in the complaint in the negative and held it unnecessary to answer the other two, and the executors have appealed.

It is only necessary to consider the questions as ap-

plied to the provision for the disposition of the residue, and we confine our discussion to it. We premise that the testatrix undoubtedly used the word "institutions" in its broad meaning of established societies or corporations. Webster's New International Dictionary; *Matter of Shattuck,* 193 N. Y. 446, 454, 86 N. E. 455; *Estate of Sutro,* 155 Cal. 727, 735, 102 Pac. 920. In the provisions in the will, read in the light of the trial court's finding, certain aspects of the testatrix' intent can be clearly seen. Most of the institutions which she had in mind directly administered the money they received in providing education, relief or assistance instead of holding and distributing funds or the income thereof among institutions of that kind. The testatrix did not intend that the whole fund should go to a single institution. She did not set up a trust for the residue, but gave it directly to the beneficiaries to be selected by virtue of a power of appointment vested in the executors; *Balch* v. *Shaw,* 174 Mass. 144, 148, 54 N. E. 490; and consequently the payments to them would come directly from the estate. These payments were to be made within such time as might properly be taken to settle it. The selection of those who were to receive funds was to be made by the executors. If the plan proposed by the executors be tested against this intent, the contrast is striking. Under that plan the whole fund would be paid to a single corporation within whose stated purposes would not be included the actual administration of assistance or relief; the institutions ultimately receiving the funds would receive them from the corporation and not from the estate of the testatrix; the property might be held as a continuing fund, the income only being distributed, or payments from the principal might be postponed to an indefinite future; and the selection of the institutions might not be made by the executors under the will but by mem-

bers of the corporation wholly unknown to the testatrix. It is true that because of death or other reasons, persons not named by her might be appointed executors, but any person succeeding to that position would be chosen by the Probate Court, a very different situation than would exist if the executors or other members of the corporation might name those who would control the selection of the beneficiaries; and this the testatrix may be assumed to have known, just as she may be assumed to have known that successor trustees of the fund created for her husband would be persons chosen by the court. The executors might, no doubt, within the limits of a sound discretion, include among the beneficiaries institutions which do not directly administer relief or assistance but distribute money among institutions that do, where the former are not created by the executors. But, as the trial court concluded, the plan proposed not only would not carry out the intention of the testatrix but would run counter to it in important respects. The situation presented to us is very different from that before the court in *Balch* v. *Shaw*, supra, cited to us by the executors, where the settlor of a trust provided in the trust deed for the creation of a board, which she expressly authorized to distribute a fund or its income for charitable objects. See *City Missionary Society* v. *Moeller Memorial Foundation*, 101 Conn. 518, 126 Atl. 683.

The trial court was correct in answering the first two questions in the complaint in the negative. These answers did not, however, as it ruled, make the answer to the fourth question academic or one not properly to be decided in this case. That question asked in effect a determination whether any institution might be selected as a beneficiary which would be within the scope of the word "benevolent," but would not be "charitable" in its nature. The decision that the fund

could not be turned over to the proposed corporation was the very fact which made this question one as to which the executors might properly seek advice. It was error for the trial court to refuse to answer it. Ordinarily the proper judgment where a court erroneously fails to adjudicate an issue is to remand the case that it may do so. *Russo* v. *Seleit,* 98 Conn. 398, 413, 119 Atl. 569; *Alfred M. Best Co., Inc.* v. *Goldstein,* 124 Conn. 597, 604, 1 Atl. (2d) 140. In this instance, however, the record presents the entire proceedings before the trial court, the question is essentially one of law and we are in no different position than we would be had the trial court answered it and we were called upon to review its judgment. We shall, therefore, consider the question upon its merits.

The word "benevolent" standing by itself is broader than the word "charitable." "While it is true that there is no charitable purpose which is not also a benevolent purpose, yet the converse is not equally true, for there may be a benevolent purpose which is not charitable, in the legal sense of the term." *Adye* v. *Smith,* 44 Conn. 60, 71. See also *New England Theosophical Corporation* v. *Boston,* 172 Mass. 60, 62, 51 N. E. 456; Zollmann, Charities, p. 268, § 398; 7 C. J. 1141; 10 C. J. S. 343. It is our policy, as it is that of other courts, to look with favor upon gifts to charity and to sustain them whenever that can reasonably be done; to that end we search the entire will, read in the light of surrounding circumstances; and if there appears from the whole an intent to devote property to a charitable use a narrower interpretation may be given to a word than is its natural import. *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 Atl. 785. In the case before us, however, so far as the record shows, nothing in the terms of the will indicates that the word "benevolent" was used with other than its

natural significance. The executors point to the long list of institutions which the testatrix gave to one of the executors as those in which she was interested, but there is no finding, nor indeed any evidence on which to base a finding, that they were all charitable as distinguished from benevolent institutions, and the court could not take judicial notice that they were of the former character. Nor are we here confronted with a situation where to give to the word "benevolent" its natural meaning would make the gift invalid.

"In the absence of any criterion but the naked signification of the terms themselves, the courts can no more say that benevolence has the import of charity and nothing more, because in some of their senses the two words assimilate, than it would be legitimate to adjudge that the number five means four because the two numbers are but a single solitary number apart. Nor does the conjunction of the two words make them identical in meaning, as that would imply that one of the terms would be dispensed with or that the lesser would swallow up the larger. For a court to strike out the broader of the descriptive terms under such circumstances may indeed uphold an occasional will, but cannot but undermine at the same time one of the most important canons established for the construction of written instruments." Zollmann, op. cit., p. 270. With this statement we agree. It follows that the executors are authorized by the will to pay such part of the fund as they deem proper to institutions which are benevolent in their nature, as distinguished from those which are charitable.

The tax commissioner assigns as error a finding of the trial court that all the donations made by the executors during the year 1939 were for charitable, educational and religious purposes. The reason of this claim of error is apprehension lest this finding might

later preclude the commissioner from questioning whether distributions to the institutions to which those donations were made were exempt from taxation as gifts for charitable purposes. The only basis in the evidence for the finding is the opinion expressed by one of the executors that all the institutions on the list furnished by the testatrix were of a charitable as distinguished from a benevolent character. This evidence came in without objection, and so might properly be considered subject to any inherent weakness it had. *Keeler* v. *Sears, Roebuck Co.*, 121 Conn. 56, 60, 183 Atl. 20. But, in the absence of any testimony as to the basis upon which the witness founded his opinion or of the knowledge he had of their purpose or nature, the testimony is insufficient to justify the finding of the trial court. Without questioning whether the apprehension of the tax commissioner as to its effect is well grounded, we strike out the portion of the finding attacked.

There is error in part. The case is remanded with direction to render the same judgment with reference to the first three questions as that on file and in answer to the fourth question to enter judgment that the executors may distribute the fund to institutions which are benevolent though not charitable in their nature.

In this opinion the other judges concurred.