**H. Wadsworth HIGHT, One of the Executors of the Will of Alice F. Cochran, Deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 136, Docket 24781.**

United States Court of Appeals Second Circuit.

Argued Jan. 16, 1958.

Decided June 18, 1958.

Charles M. Lyman, New Haven, Conn. (Cleaveland J. Rice, Jr., New Haven, Conn., Jackson J. Holtz, Hershel Zonderman, Boston, Mass., on the brief), for plaintiff-appellant.

Frederic G. Rita, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Washington, D. C., Simon S. Cohen, U. S. Atty., Hartford, Conn., on the brief), for defendant-appellee.

Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.

MOORE, Circuit Judge.

Plaintiff, the surviving executor under the will of Alice F. Cochran, deceased, brought this action to recover $369,180.-86 with interest from May 31, 1943 paid by the executors because of an estate tax deficiency assessment which resulted from the disallowance of any charitable deduction for legacies distributed pursuant to Mrs. Cochran's will.[1] The district court dismissed the action on the merits.

The testatrix by will left all her residuary estate to "such charitable, benevolent, religious or educational institutions as my executors hereinafter named may determine." Despite the fact that all institutions which received legacies are conceded to be "so created and constituted that a legacy to any one of them is deductible under Federal law in determining the net estate subject to the Federal estate tax" (Stip. of Facts, par. 15), the Commissioner disallowed all such legacy deductions "upon the theory that

the plaintiffs had power to appoint said remainder and residue exclusively to benevolent institutions that were not also charitable" (Id. par. 22).

The question to be determined is whether the word "benevolent" included with the words "charitable," "religious" or "educational" is sufficient to deprive this estate of the tax benefits bestowed by Congress upon public-minded citizens who desire to devote their estates to public purposes.

The word "benevolent" has no fixed meaning which is self-defining. Webster's New International Dictionary (1934 Ed.) defines it in part as "disposed to give to good objects; kind; charitable" thus giving it a place within the category of "charitable."

"Benevolent" has been frequently used in combination with such words as "charitable." Where so employed the courts almost invariably follow the rule succinctly summarized in American Jurisprudence (10 Am.Jur. p. 590) as follows:

"The word 'benevolent,' however, is thrust into many bequests and devises for charitable purposes and is intertwined in endless ways with other words of the context. If the word 'benevolent,' as used in such cases, or when coupled with the word 'charitable,' was plainly intended to be synonymous with the word 'charitable,' courts will give effect to the gift according to that intent."

Restatement of Trusts, section 398, comment d, singles out the phrase "charitable or benevolent" as an example of the application of the principle of *ejusdem generis* to uphold a charitable trust:

"Where by the terms of the trust a word is used which standing alone would be broader than charity, it may in view of the other terms of

1. The applicable statute is section 303(a)(3) of the Revenue Act of 1926, 44 Stat. 836, which provides for a deduction from the gross estate of "[T]he amount of all bequests, legacies, devises, or transfers * * * for exclusively public purposes, or to or for the use of any * * * corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals * * *". 26 U.S.C.A. 812(d).

the trust be interpreted as limited to charity. Thus, where a testator devises or bequeaths property to be applied to 'charitable or benevolent' purposes, the word 'benevolent' may be interpreted as a synonym for 'charitable,' and not as including purposes which are not charitable, even though the word 'benevolent' standing alone might be interpreted as including purposes which are not charitable."

Decisions by the courts holding "benevolent" synonymous with "charitable" are legion.[2]

■ Where the words are, as here, placed in the disjunctive, "or" is often construed as "and" where the testator's intent is clear.[3]

■ Since the primary purpose of her will was to enable the testatrix to carry out after death through her trusted executors her wishes as to the disposition of her property, her intent is to be found not only in the will itself where discretion as to the selection of beneficiaries was vested in the executors but also from such tangible evidence of that intent as she may have exhibited and conveyed to her executors during her lifetime and from the executors' understanding of the testatrix's wishes.

■ The "authority [of the executors] to select the beneficiaries from the general class described" and their actual selection of the beneficiaries must be given weight (St. Louis Union Trust Co. v. Burnet, 8 Cir., 1952, 59 F.2d 922, 926, 929). In that case the trustees, under a direction to devote the remainder of an estate "to such benevolent purposes as, in their opinion will constitute a fitting testimonial or memorial for me, and in some degree, extend my usefulness and helpfulness to others," selected the YMCA and Washington University, both in St. Louis, Missouri. The court did not "contend that what the trustees have actually done is determinative of the petitioner's right to deduction" but felt "this disposition of the fund is illustrative of the use essential to the creation of a fitting memorial for the testator, and

2. E. g., St. Louis Union Trust Co. v. Burnet, 8 Cir., 1932, 59 F.2d 922 (discussed in text, *infra*); Gossett v. Swinney, 8 Cir., 1931, 53 F.2d 772, 774, certiorari denied 286 U.S. 545, 52 S.Ct. 497, 76 L.Ed. 1282 (directing trustees of a testamentary trust to "apply the principal and income of said trust estate for the furtherance and development of such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purpose in Kansas City, Missouri, as said Trustees shall in their absolute discretion determine to be in the public interest"); Michigan Trust Co. v. United States, D.C. W.D.Mich.1937, 21 F.Supp. 482, 483 (directing that a remainder after a testamentary trust "be disposed of for such corporate charity or corporate benevolence or public purpose as my wife, Mary Silver Gilbert, may, by her last will and testament, appoint"); Union & New Haven Trust Co. v. Eaton, D.C.D. Conn.1927, 20 F.2d 419, 421 (a bequest to a corporation whose charter stated its purpose to be "the promotion of practical benevolence in the city of New Haven" held to be a charitable gift deductible from the gross estate); People v. Y. M. C. A. of Chicago, 1937, 365 Ill. 118, 6 N.E.2d 166, 170 (a corporation empowered by its charter to purchase, hold, and convey real estate "for the purpose of establishing and maintaining free libraries and reading rooms and for benevolent and religious purposes"); In re Snell's Will, 1942, 154 Kan. 654, 121 P.2d 200, 201 (residuary estate to be "given by my said executor to * * * some charitable or benevolent organization"); Suter v. Hilliard, 1882, 132 Mass. 412 (a residuary bequest directing the trustees "To assist and cooperate with any such charitable, benevolent, religious, literary and scientific societies and associations, or any of them, as shall appear to the trustees or trustee for the time being best to deserve such assistance and cooperation"); In re Murphy's Estate, 1898, 184 Pa. 310, 39 A. 70 (residue of estate "to be divided among such benevolent, charitable, and religious institutions and associations as shall be selected by my executors").

3. Smith v. United States National Bank of Denver, 1949, 120 Colo. 167, 207 P. 2d 1194; In re Snell's Will, 1942, 154 Kan. 654, 121 P.2d 200; Thorp v. Lund, 1917, 227 Mass. 474, 116 N.E. 946.

of the interpretation that has been,—naturally, we think—placed upon this article of the will" (ibid.).

Four fact areas, therefore, must be investigated for clues as to intent: (1) the testatrix' deeds during her lifetime; (2) the circumstances relating to the making of her will; (3) the disclosure of her wishes to the executors in whom she placed the responsibility for selecting the institutions to receive her bounty; and (4) the manner in which the executors carried out her wishes.

### 1.  Benefactions by the Testatrix During Her Lifetime.

During her lifetime, Mrs. Cochran gave generously to tax-exempt institutions. Invariably she exceeded the annual maximum allowable deduction for income tax purposes. In order to have additional funds available for charitable purposes she consulted with her financial advisor (and subsequent executor), H. Wadsworth Hight, to verify the tax-exempt character of the institutions to which she proposed to make gifts. Her lists of contributions used in connection with the preparation of income tax returns in the two years immediately preceding her death, 1937 and 1938, set forth only tax-exempt institutions.

### 2.  The Drafting of the Will.

Prior to the execution of her will in 1928, Mrs. Cochran had been for many years a resident of Massachusetts. The will was drawn in Boston by Albert M. Chandler, an attorney who had practiced in that city for many years. The executors appointed were her husband, Edwin Paul Cochran, her financial advisor, H. Wadsworth Hight, and her attorney, Albert M. Chandler. Her residuary estate was left to "such charitable, benevolent, religious or educational institutions" as these executors might determine. Since 1865 the settled law of Massachusetts has been that "benevolent" used in the disjunctive with "charitable" creates a valid gift to charity. Saltonstall v. Saunders, 93 Mass. 446. It is inconceivable that Mr. Chandler would not have been familiar with this case or the line of subsequent decisions adhering to the rule set forth therein.

### 3.  Disclosure by the Testatrix of Her Wishes With Respect to Institutions to Be Designated.

For the guidance of her executors, Mrs. Cochran prepared a list of charities all of which were tax-exempt (Plaintiff's Exhibit DD). She did this instead of naming specific institutions because she felt that changing circumstances might alter either the purpose of the institution or its worthiness and that discretion in the executors would enable her wishes better to be fulfilled.

Her sister, Caroline Fox, who predeceased her, had directed that the residue of her estate be distributed to certain enumerated charities. After her death it developed that although some of these charities were not in need of additional funds, nevertheless they shared in the distribution. Mrs. Cochran, distressed over this result, was desirous that her estate would pass only to needy organizations, and to this end determined to rely upon the discretion of her executors.

### 4.  The Manner in Which the Executors Distributed the Residuary Estate.

Mrs. Cochran died on January 24, 1939, a resident of New Haven, Connecticut. The will was admitted to probate in New Haven and the three executors qualified thereunder. In April 1940 they filed their federal estate tax return claiming a deduction for the entire residuary estate and the then present value of the remainder interest in a trust fund. These deductions were disallowed and an additional tax of $369,180.86 was assessed and paid in May 1943.

In December 1945 the executors filed their account in the New Haven Probate Court showing that they had paid legacies in the total amount of $500,000 to some 64 institutions, all of which are concededly tax-exempt in character. In the same account they designated 18 institutions to participate in any federal estate tax refund and 31 institutions to

receive the remainder interest in the trust fund established by the will. All the designated institutions qualify as tax-exempt.

From these facts there can be no doubt that Mrs. Cochran during her lifetime gave ample proof of the type of institution which she selected for her benefactions. Her wishes were conveyed to her executors both orally and in writing. The executors understood these wishes and explicitly carried them out. All institutions which received legacies as a result of the executors' designations were "so created and constituted that a legacy to any one of them is deductible under federal law in determining the net estate subject to the Federal Estate Tax and were so during all years material herein." (Stipulation of Facts and Evidence, Para. 31.)

The primary question presented is whether the legacies given pursuant to the will are within the exemption expressly granted by Congress. Conversely, in this tax case no question is raised as to whether the bequests are void for uncertainty because given to an indefinite class. For this reason decisions to the effect that gifts "for any and all benevolent purposes" [4] or "to such objects of benevolence and liberalty as [the trustee] in his own discretion shall most approve of" [5] are too indefinite and hence void are inapposite. Equally inapplicable are federal estate tax cases in which deductions were not allowed because the charitable bequests were void under state law.[6] No court has held the residuary clause of Mrs. Cochran's will void and that question is not before us on this appeal.

The ultimate decision as to tax exemption rests in the federal courts. The district court, in its opinion below, accurately and concisely stated the rule, saying [151 F.Supp.2d 204]:

"What is meant by the words 'exclusively for * * * charitable * * * purposes' in Sec. 303(a) (3) of the Federal estate tax law is for the Federal courts to say in the light of what they find the Congressional intent to have been regardless of what the State of the decedent's domicile may have to say about it or how strictly or liberally that State may define 'charitable' in the legal sense for different purposes. United States v. Pelzer, 1941, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913; Morgan v. Commissioner, 1939, 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 1938, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119."

In arriving at the conclusion that the use of the word "benevolent" bestowed upon the executors the power to give to institutions not tax-exempt in character, and hence that the legacies here given were non-deductible, the district court was influenced by the opinion of the Supreme Court of Errors of Connecticut in a case brought by the executors involving this very estate (Cochran v. McLaughlin, 128 Conn. 638, 24 A.2d 836, 839).

### The Connecticut State Court Case

Early in 1942 the executioners brought a declaratory judgment action in the Superior Court of New Haven County to ascertain their right to create a corporation to which the residuary estate could be transferred to be paid over "to such charitable, religious, and educational institutions, wherever situated, as may be selected by said corporation." The executors alleged a "doubt as to whether or not a corporation so formed would be within the provisions of said Articles Four (the trust) and Thirty (the residue) of said will and within the statutes of the State of Connecticut regulating exemptions

---

4. Adye v. Smith, 1876, 44 Conn. 60, 26 Am. Rep. 424.

5. Morice v. The Bishop of Durham, 9 Ves. 399, 32 Eng.Rep. 656 (1804), affirmed 10 Ves. 522, 32 Eng.Rep. 947 (1805).

6. Watkins v. Fly, 5 Cir., 1943, 136 F.2d 578; Selig v. United States, E.D.Pa. 1947, 73 F.Supp. 886, affirmed 3 Cir., 1948, 166 F.2d 299.

**801**

from taxation \* \* \*" The defendants were the Connecticut Tax Commissioner and the State Attorney General. No federal estate tax question was involved. The declaratory judgment sought answers to four questions, i. e., (1) whether such a corporation could properly be designated as the beneficiary under Articles Four and Thirty; (2) whether the executors could properly turn over the property to such a corporation; (3) whether there would be a Connecticut estate tax if such action were taken; and (4) whether "any class of beneficiary would be included under the designation 'benevolent' as used in said will which would not also satisfy the designation of 'charitable' as used in said will." The Superior Court answered the first two questions "no" and held that, in view of this answer, (3) was not then susceptible of answer and (4) became academic. The Supreme Court of Errors sustained the Superior Court as to questions (1) and (2), i. e., that the residue and the executors' powers of designation could not be turned over to a corporation. However, as to question (4) the Connecticut Supreme Court said "The word 'benevolent' standing by itself is broader than the word 'charitable.'" Despite the concession here as to the tax-exempt character of the institutions given to the executors by Mrs. Cochran, the Connecticut Supreme Court found that "there is no finding, nor indeed any evidence on which to base a finding, that they were all charitable as distinguished from benevolent institutions, and the court could not take judicial notice that they were of the former character." Thus the Connecticut court did not pass upon the crucial element of intent or the tax-exempt nature (now conceded) of the selected beneficiaries.

However, the court specifically upheld the validity of the disposition of residuary estate, thereby indicating that the term "benevolent" was a sufficiently definite direction to her executors. The district court in the instant case distinguished the federal decisions allowing deductions where the devises were to "be-

nevolent institutions" on the ground that the Connecticut court had precisely delineated the term "benevolent" so as to encompass "institutions whose principal function is to provide pleasure and cheer to their members." However, had the Connecticut court reached such a conclusion, it would have had no alternative but to find the trust incapable of being enforced, and would have been compelled to strike out the disposition of the entire residuary estate as void for uncertainty and indefiniteness. See Adye v. Smith, 44 Conn. 60, 26 Am.Rep. 424. To forestall any such misinterpretation of its decision, the court pointed out that it was not "confronted with a situation where to give to the word 'benevolent' its natural meaning would make the gift invalid." 128 Conn. 638, 24 A.2d 836, 839.

The Connecticut court did no more than reiterate an abstract principle of Connecticut law, namely that absent some evidence of a contrary intent "benevolent" is not synonymous with "charitable." Although state law determines whether a valid trust for indefinite beneficiaries has been created, once such a trust has, as here been held to be valid, "the taxability of the estate is not a matter of local law, but turns on the question of whether the particular gift is within the exemption of the federal statute" (Sharpe's Estate v. Commissioner of Internal Revenue, 3 Cir., 1945, 148 F.2d 179, 181). The decision of Cochran v. McLaughlin, supra, is, therefore, in no way dispositive of the issue on this appeal.

The language of the First Circuit in Third National Bank and Trust Co. of Springfield v. United States, 1 Cir., 1956, 228 F.2d 772, 773, in rejecting a contention that a decree of the Massachusetts Probate Court pre-determined the question of deductibility under the federal estate tax statute aptly applies here:

"\* \* \* the decree only states an existing rule of law in Massachusetts, and no doubt elsewhere also, to be applied as a general proposition in the absence of indications

to the contrary in the language of the will itself or in the circumstances surrounding its use. It is in effect a mere statement of abstract principle."

The appellee would have us construe the Connecticut decision as holding as a matter of law that inclusion of the word "benevolent" prevented the trust from being a charitable one,[7] and asks us to imply a holding by that court that the testatrix did not intend the residue of her estate to pass to institutions tax-exempt under Section 303(a) of the Revenue Act of 1926. Nothing in that decision gives rise to such an implication, and, in fact, the Connecticut court, in our opinion, did not make such a determination.

■ The overwhelming weight of authority supports the principle that the word "benevolent" particularly when used with the word "charitable" applies to institutions which are within the scope of Section 303(a)(3) of the Revenue Act of 1926 (Chicago Bank of Commerce v. McPherson, 6 Cir., 1932, 62 F.2d 393, certiorari denied 289 U.S. 736, 53

S.Ct. 596, 77 L.Ed. 1484; St. Louis Union Trust Co. v. Burnet, supra; Michigan Trust Co. v. United States, supra; Gossett v. Swinney, supra). "Benevolent" is not a word of art connoting "non-charitable" or "non-tax-exempt." To the contrary as used in ordinary speech and writing it is associated and is synonymous with "charitable." In granting tax deductions for bequests of the type listed in Section 303(a)(3), Congress could not have intended to encourage bequests for eleemosynary purposes only to have them defeated by narrow construction.

The judgment below is reversed and the case is remanded to the District Court for recomputation of the tax and entry of judgment in conformity with this opinion.

In view of our decision, plaintiff's motion to amend the complaint to include a refund of federal estate tax which might have resulted from the deduction of attorneys fees and expenses incurred in this refund proceeding from the decedent's gross estate is moot and the motion, accordingly, is denied.

7. No such rule exists in Connecticut. In fact, its legislature has used "benevolent" on several occasions to describe charities. E. g. C. 245, Public Acts of Connecticut, 1925, exempts from taxation "personal property of scientific, educational, literary or benevolent institutions"; C. 109, Public Acts of Connecticut, 1921, exempts from taxation "buildings and the land on which they stand, belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies"; C. 159, Public Acts of Connecticut, 1919, uses the same language in granting a similar exemption; C. 283, Public Acts of Connecticut, 1921, exempts from transfer and inheritance taxes all property given "to any religious, educational, literary, charitable, missionary, benevolent, hospital or infirmary corporation incorporated under the laws of another state."
Furthermore, the Treasury Department itself has recognized the charitable nature of Connecticut corporations founded for "benevolent" purposes. Thus the Lucien B. and Katherine E. Price Foundation, Inc., a Connecticut corporation, states as its purpose "to improve the physical, mental and moral condition of humanity and generally to advance charitable and benevolent objects * * *" Likewise the act incorporating the Hartley Corporation (Special Laws of Connecticut, 1921, p. 532) empowers the trustees thereof to make distributions "for such charitable, benevolent and educational purposes, as they, the said board of trustees, shall in their discretion select * * *". Both the Price Foundation and the Hartley Corporation appear in the Cumulative List of Organizations Described in Section 170(c) of the Internal Revenue Code of 1954, i. e., 26 U.S.C.A. § 170(c) have been explicitly recognized by the Treasury Department as charitable institutions.