ESTHER M. ALDERMAN, ADMINISTRATRIX (ESTATE OF ABRAHAM J. ALDERMAN) *v.* THE HANOVER INSURANCE GROUP

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 4—decided November 29, 1967

*James O. Shea,* with whom, on the brief, was *Norman Zolot,* for the appellant (defendant).

*Jerrold H. Barnett,* with whom was *Maxwell A. Alderman,* for the appellee (plaintiff).

ALCORN, J. The subordinate facts found by the court are not contested. They disclose that this controversy arose as follows: The plaintiff, under the trade name of Alderman-Dow Iron and Metal Company, was engaged in the scrap iron and metal business, which included the processing of materials on the plaintiff's premises, as well as the collection and removal of industrial scrap and boilers away from the premises. Prior to March 27, 1961, the defendant had issued to the plaintiff's decedent, Abraham J. Alderman, a manufacturers' and con-

tractors' schedule liability policy covering the period from March 27, 1961, to March 27, 1964. On May 14, 1963, Alderman had contracted with the Hamilton Industrial Center of New Haven to remove a coal conveyor, boilers, and other items from a two-story brick building. The work undertaken did not require the removal of any partitions or walls in the building. The coal conveyor was made of welded, four-foot sections of $\frac{1}{8}$-inch steel tubing, which extended from the ground through the roof of the building. It was five feet square at its base and three feet in diameter at its top.

On May 15, 1963, the original insured, Abraham J. Alderman, died, and the plaintiff was appointed administratrix of his estate with authority, which she exercised, to conduct the business. On May 29, 1963, the defendant issued an additional certificate of insurance to the owners of the Hamilton Industrial Center, naming the plaintiff as the insured and increasing the limits of the original policy.

The plaintiff commenced work under the agreement with the Hamilton Industrial Center on June 8, 1963. The work continued for the next three weeks entirely within the building except for the removal of two boilers behind the building. On June 29, 1963, the conveyor had been removed except for that portion extending into the air from the roof of the building. This section was braced by guy wires attached to the corners of the building. On June 29, the plaintiff's employees attached the guy wires to a truck and pulled down this section of the conveyor. In falling, it damaged the wall and roof of the Hamilton Industrial Center building. The plaintiff notified the defendant of the incident, and the defendant disclaimed coverage of the loss under the language of exclusion (n) in the policy, the

relevant parts of which read as follows: "This policy does not apply: . . . (n) under coverage B, with respect to division 1 of the Definition of Hazards, to injury to or destruction of any property arising out of . . . (2) the collapse of or structural injury to any building or structure due . . . (b) to moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof . . . ."

For a period of some nine months, the plaintiff continued to demand, and the defendant to deny, coverage. Meanwhile, on September 3, 1963, the Hamilton Industrial Center made demand on the plaintiff for damages and threatened suit. On June 3, 1964, before suit was brought, the plaintiff settled the claim. The settlement plus disbursements for engineering, adjustment, legal and other incidental expenses totaled $8150.83.

The plaintiff brought the present action to recover this amount, and the defendant answered the complaint but pleaded no special defenses. During the trial, the defendant admitted that the policy was in effect at the date of the injury but denied that the plaintiff had performed her part of the conditions and obligations under the policy. Also, during the trial, the plaintiff's attorney admitted, and the court understood, that exclusion (n) under the policy was an issue in the case although it was not pleaded.

The court rendered judgment for the plaintiff, and the defendant has appealed, assigning error in the court's conclusions of fact and in the court's action in overruling the defendant's claims of law, which, in substance, served to negate those conclusions.

The real issue which the appeal seeks to raise is whether the plaintiff's activity in removing the

conveyor was an operation within the terms of exclusion (n) and consequently not covered by the policy. The court concluded that the issues framed by the pleadings were "the existence of a policy," a loss under its provisions and the amount of that loss. It also concluded that "[i]n the absence of a special defense raising the issues of noncompliance with conditions and limitations of the policy, the plaintiff was under no duty to go forward with evidence to prove compliance." We consult the memorandum of decision to explain these conclusions. *Molk* v. *Micklewright,* 151 Conn. 606, 608, 201 A.2d 183. There we find the statement: "In this case the defendant failed to set up the exclusion by way of special defense and therefore is precluded from taking advantage of the limitations contained in the policy."

The court then concluded that the issues before it were those presented by the pleadings, that the plaintiff had proved the material allegations of her complaint and fulfilled all conditions precedent to a recovery, and that she had sustained a loss which was covered by the policy for which the defendant should reimburse her under its obligation to defend.

It is apparent from these conclusions that the judgment in the plaintiff's favor was rendered without the court's deciding the principal issue between the parties, namely the applicability of exclusion (n).

Under our rule the defendant should have pleaded exclusion (n) as a special defense if it intended to rely on it. *O'Brien* v. *John Hancock Mutual Life Ins. Co.,* 143 Conn. 25, 29, 119 A.2d 329; *Wojcik* v. *Metropolitan Life Ins. Co.,* 124 Conn. 532, 534, 1 A.2d 131; *Fogarty* v. *Fidelity & Casualty Co.,* 120 Conn. 296, 299, 180 A. 458; see *Harty* v. *Eagle*

*Indemnity Co.,* 108 Conn. 563, 565, 143 A. 847; *Sortito* v. *Prudential Ins. Co.,* 108 Conn. 163, 169, 142 A. 808. No such defense was pleaded, however. Nevertheless the court has found that, during the trial, the plaintiff agreed that exclusion (n) was in issue and that the court considered it to be an issue in the case. It also expressly found that the plaintiff's attorney admitted, during the trial, that "whether or not the activity of the plaintiff constituted a wrecking operation was an issue in the case." Finally, the extent to which evidence was offered on the subject is indicated by the fact that twenty-one of the forty-nine paragraphs of subordinate facts in the finding are devoted to a description of the nature of this operation.

The failure to file a special defense may be treated as waived when it appears that no objection was raised to the offer of evidence on the issue at the trial. *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698; *Mainolfi* v. *Brazee,* 135 Conn. 435, 437, 65 A.2d 261; *O'Donnell* v. *Groton,* 108 Conn. 622, 625, 144 A. 468; *Hanley Co.* v. *American Cement Co.,* 108 Conn. 469, 471, 143 A. 566; see *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 686, 220 A.2d 263. Under the circumstances disclosed by the finding, it was error for the court to refuse to decide what effect, if any, exclusion (n) had on the defendant's liability under the policy.

Ordinarily, the proper judgment in such a situation is to remand the case in order that the court may decide the issue. Under circumstances where the record presents the entire proceedings before the trial court, the question is essentially one of law, and we are in no different position than we would be in had the trial court answered it, we

have considered, on its merits, the question thus left undecided. *Cochran* v. *McLaughlin,* 128 Conn. 638, 644, 24 A.2d 836. The present case does not, however, present such a situation. The refusal to decide the applicability of exclusion (n) inevitably tainted the other conclusions reached by the court.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.